ARTISTIC WEAVING CO., AN AMERICAN MANUFACTURER, *v.* MA-
GUIRE ET AL., UNITED STATES IMPLEADED (NO. 2532)[1]

1. MARKING—ROLLS OF GARMENT LABELS.

Labels of silk and cotton, woven in continuous lengths of 50 to 100 meters, were imported in rolls of 500 to 1,000 labels. Around each roll was a paper band marked with the name of the country of origin. Each label bore the name, brand, trade-mark, or other distinctive feature desired by the American garment manufacturer who ordered them, and was designed to be cut from the roll and attached to the garment. The label, not the roll, is the *article* required by section 304 (a), Tariff Act of 1922, to be marked with the name of the country of origin.

2. EVIDENCE, RELEVANCY—MARKING, INJURY.

Where it appears that garment labels may be marked with the name of the country of origin "without injury" to them *per se*, such provision of section 304 (a), Tariff Act of 1922, is met; and showings that such markings mar the artistic character of their designs and might cause their rejection by the garment manufacturer are beside the question.

United States Court of Customs Appeals, June 3, 1925

APPEAL from Board of United States General Appraisers, Abstract 48786

[Reversed.]

*Gleason, McLanahan, Merritt & Ingraham (George C. Austin* and *Walter Gordon Merritt* of counsel) for appellant.
*John R. Rafter* for appellees.
*William W. Hoppin,* Assistant Attorney General, for the United States.

[Oral argument May 21, 1925, by Mr. Austin and Mr. Rafter]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal by the Artistic Weaving Co., an American manufacturer, from a judgment of the Board of General Appraisers overruling protests 8501–G, 8502–G, 8503–G, 8504–G, and 8505–G. The protests were filed by the appellant against the collector's classification of imported merchandise as legally marked.

The merchandise consists of woven labels composed of silk and cotton, woven in continuous lengths of 50 to 100 meters and imported in rolls, each containing from 500 to 1,000 labels. Around each roll is a paper band and inscribed thereon is the number of labels contained in the roll and the words "made in Germany." The individual labels were not marked so as to indicate the country of origin.

The collector, acting upon instructions of the Treasury Department, held that the individual labels were not required by law to be marked so as to indicate the country of origin, and the Board of General Appraisers affirmed his decision.

---

[1] T. D. 40964.

It appears that the labels are used by manufacturers of wearing apparel. At or prior to the time of their use the individual labels composing the "roll of labels" are separated by the American manufacturer of clothing by cutting, and each label is attached to an article of clothing as a means of indicating to the purchaser thereof the brand, trade-mark, or name of the manufacturer, or other distinctive feature necessary to proper identification of the quality and character of the article.

Each American manufacturer determines the size, color, and design of the label he desires, and, therefore, each manufacturer has a distinctive label for the clothing he manufactures. If the labels are not manufactured in accordance with his specifications as to size, color, and design, they are not accepted.

It is contended by the appellant that the individual labels are the articles of commerce, and that each label should have been marked so as to indicate the country of origin; and that each label could have been so marked without injury at the time of its production.

The appellees contend that the "roll of labels" is the article of importation; that each roll was legally marked; and that the individual labels could not have been marked at the time of production without injury, because, if they had been so marked, the American manufacturer who ordered the labels would have refused to accept them, and, in consequence, they would have been worthless.

Section 304 (a) of the Tariff Act of 1922 reads as follows:

SEC. 304. (a) That every article imported into the United States, which is capable of being marked, stamped, branded, or labeled, without injury, at the time of its manufacture or production, shall be marked, stamped, branded, or labeled, in legible English words, in a conspicuous place that shall not be covered or obscured by any subsequent attachments or arrangements, so as to indicate the country of origin. Said marking, stamping, branding, or labeling shall be as nearly indelible and permanent as the nature of the article will permit. Any such article held in customs custody shall not be delivered until so marked, stamped, branded, or labeled, and until every such article of the importation which shall have been released from customs custody not so marked, stamped, branded, or labeled, shall be marked, stamped, branded, or labeled in accordance with such rules and regulations as the Secretary of the Treasury may prescribe. Unless the article is exported under customs supervision, there shall be levied, collected, and paid upon every such article which at the time of importation is not so marked, stamped, branded, or labeled, in addition to the regular duty imposed by law on such article, a duty of 10 per centum of the appraised value thereof, or if such article is free of duty there shall be levied, collected, and paid upon such article a duty of 10 per centum of the appraised value thereof.

Every package containing any imported article, or articles, shall be marked, stamped, branded, or labeled, in legible English words, so as to indicate clearly the country of origin. Any such package held in customs custody shall not be delivered unless so marked, stamped, branded, or labeled, and until every package of the importation which shall have been released from customs custody not so marked, stamped, branded, or labeled shall be marked, stamped, branded, or labeled in accordance with such rules and regulations as the Secretary of the Treasury may prescribe.

The Secretary of the Treasury shall prescribe the necessary rules and regulations to carry out the foregoing provisions.

In the case of *Bradford Co. et al., United States Impleaded* v. *American Lithographic Co., An American Manufacturer*, 12 Ct. Cust. Appls. 318, T. D. 40318, this court said:

An article is defined by the lexicographers as something considered by itself, a particular object or substance; a material thing of a particular class or kind; * * *

The imported article under consideration, it seems to us, is not the bundle or package of cigar bands, it is the cigar band itself, manufactured for a definite purpose and use and imported in packages containing several individual articles, or bands. They are undoubtedly put up in packages for convenience in handling. The character of the individual article has not been changed by putting it up in packages containing 100 similar articles, and importing it in that condition. The cigar band is the manufactured article and it is the article of importation.

In that case each cigar band was a separate article although packed with other like articles.

In the case now under consideration the individual labels were not separated, but were imported in continuous lengths in rolls containing from 500 to 1,000 labels each. They were woven in continuous lengths as a matter of necessity and imported in the manner stated for convenience in handling.

In the case of *United States* v. *Buss & Co.*, 5 Ct. Cust. Appls. 110, T. D. 34138, this court held—

The rule expressed by the decisions just cited recognizes the fact that most small articles are not produced as individual or separate products of the loom, but for economy of manufacture are first woven "in the piece." The rule of the decision is therefore established that where such articles are imported in the piece and nothing remains to be done except to cut them apart they shall be treated for dutiable purposes as if already cut apart and assessed according to their individual character or identity. This follows, however, only in case the character or identity of the individual articles is fixed with certainty and in case the woven piece in its entirety is not commercially capable of any other use.

The labels in this case were woven in the piece or continuous lengths and imported in such condition. There was nothing left to be done except to separate the individual labels by cutting. The identity of the labels was fixed with certainty, and the roll of labels in its entirety had no other commercial use. Accordingly the labels should have been classified as the articles of importation.

The individual labels not having been marked so as to indicate the country of origin at the time they were brought into this country with intention to unlade, it remains to be determined whether they could have been so marked without injury at the time of manufacture.

It clearly appears from the evidence and from an examination of the imported merchandise that no injury would have resulted if the words "made in Germany" or "label made in Germany" had been

woven on the labels at the time of manufacture. But it is contended by the appellees that such marking would have destroyed the value of the labels, for the reason that labels so marked would not have been accepted by American purchasers.

That some American manufacturers of wearing apparel might have refused to accept legally marked labels because it appeared thereon that they were made in Germany, or because suitable words indicating the country of origin of the imported articles appeared to them to mar the artistic character of their designs is beside the question.

The statute provides that every article imported into the United States which is capable of being marked without injury to it at the time of its production shall be marked so as to indicate the country of origin. It must be marked in a "conspicuous place that shall not be covered or obscured by any subsequent attachments or arrangements," and such marking shall be as permanent as the nature of the article will permit.

If the required marking is for the purpose of giving information to the original purchaser and to the customs officials only, why should such marking be as permanent as the nature of the article will permit? Why should it be marked in a "conspicuous place that shall not be covered or obscured by any subsequent attachments or arrangements?"

No *permanent* marking of the article is necessary in order that the American manufacturer who purchases labels abroad may be informed as to the country of origin. The statute provides that "every package containing any imported article, or articles, shall be marked, * * * so as to indicate clearly the country of origin." Compliance with this provision of the law may be sufficient to adequately inform the customs officials and appellees as to the country of origin, but Congress has provided for something more than the marking of the *package* in which an imported *article* is contained.

It is argued that the labels become merged with the articles of clothing to which they are attached and hence are consumed by the manufacturer of wearing apparel; and since the customs officers and the consumer of the labels have been apprised as to the country of origin by the marking of the rolls, there is no necessity for marking the labels. Assuming that to be the case, the labels did not merge with and become a part of the articles of wearing apparel until so attached, and they were not attached until after importation. Congress evidently had considered just such a state of facts as advanced by appellees in this case, because it was provided that articles shall be marked in a "conspicuous place that shall not be *covered* or *obscured* by any *subsequent attachments* or *arrangements*."

The merchandise was entered as "labels," it consists of labels, and it is evident that each label could have been marked at the time of production without injury so as to indicate the country of origin. The merchandise was not legally marked, and it should have been so classified and assessed by the collector.

The judgment is *reversed* and the cause *remanded* for proceedings consistent with the views herein expressed.

BARBER, Judge, dissents.