UNITED STATES *v.* MILBANK, LEAMAN & Co. (No: 2710)[1]

1. RELATIVE SPECIFICITY—FABRICS AND MANUFACTURES OF WOOL.

The provision of paragraph 1109, Tariff Act of 1922, for woven fabrics of wool is more specific than that of paragraph 1119 for manufactures of wool. *Rogers* v. *United States,* 14 Ct. Cust. Appls. 51; T. D. 41552.

---

[1] T. D. 41693.

2. CONSTRUCTION, PARAGRAPH 1109, TARIFF ACT OF 1922—AIDED BY OTHER PARTS OF ACT—WOVEN FABRICS—SAMPLES OF WOOLEN CLOTH.

The provision of paragraph 1109, Tariff Act of 1922, for woven woolen fabrics means cloth or material in the piece and not further manufactured. Obviously it was so used in other paragraphs of the wool schedule (11), in the cotton manufactures schedule (9), in the flax, hemp, and jute schedule (10), and in the silk schedule (12). Samples of woolen cloth are articles made from woolen fabrics and are classifiable not as woolen fabrics (par. 1109) but as woolen manufactures not specially provided for (par. 1119).

## United States Court of Customs Appeals, May 29, 1926

APPEAL from Board of United States General Appraisers, Abstract 50419

[Affirmed.]

*Charles D. Lawrence,* Assistant Attorney General (*Fred J. Carter,* special attorney, of counsel), for the United States.
*Sharretts, Coe & Hillis* (*Edward P. Sharretts* of counsel) for appellees.

[Oral argument May 13, 1926, by Mr. Carter and Mr. Sharretts]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

The goods involved in this appeal are one case and two parcels of pieces of woolen cloth imported for use as samples. These pieces of cloth are of three general classes. The first consists of pieces of cloth described as "three-quarters width in various lengths, anywhere from one-sixteenth of a yard in length up to three-quarters of a yard in length." The second class consists of small pieces known as loose patterns, the official samples, which are shown to be typical, being about 2 by 12 and 7 by 9 inches in size. The third class consists of 25 so-called manufacturers' sectional ranges, these being pieces of woolen cloth of uniform material and weave, but consisting of rectangles of various colors and designs which can be removed, by cutting, for samples. The official sample of this class is about 29 by 42 inches and originally consisted of 42 different colored rectangles, each 5 by 7 inches in size. In the first class above mentioned, the larger pieces of cloth have been mutilated before being imported, being split longitudinally in the middle and with slashes cut across the weft, around the margin, at intervals of approximately 8¾ inches. In the largest official sample of this class of the goods before us, Coll. Ex. 1 A, the largest portion of goods obtainable, less the mutilated portion, is an area of about 20 by 28 inches. The second and third classes of samples above mentioned have not been mutilated prior to importation. But one witness, Frank J. Nolan, former examiner of woolens at the port of New York and at the time of hearing manager of the importing company, testified. He stated that the pieces of cloth imported here were used for samples exclusively and that, aside

from this, they have no other commercial purpose or use except as rags. As to the sectional ranges, also shown to be designated as blanket ranges, he stated:

Q. Is there any cloth, to be sold as a cloth, that ever comes in any such form as that that you know of?—A. Not to my knowledge.

Q. Would that article there serve any purpose other than to be used to be cut up into samples?—A. It might eventually be sold as rags if it is not sent back to England.

Q. Aside from that it would not serve any other purpose except cutting out as samples?—A. Not to my knowledge.

The testimony of this witness, on this subject, was not impeached or contradicted in any way.

The collector classified the goods for duty in entries Nos. 913188 and 907367 as woven fabrics composed wholly or in chief part of wool, and in entry No. 919175 as woven fabrics composed wholly of wool, weighing more than 4 ounces per square yard, valued at more than 80 cents per pound, under paragraph 1109 of the Tariff Act of 1922, at 45 cents per pound upon the wool content thereof and 50 per centum ad valorem. The importer claimed, in its protests, that the goods were dutiable at 50 per centum ad valorem as manufactures of wool not specially provided for, under paragraph 1119 of said act, or, in the alternative, at $7\frac{1}{2}$ cents per pound under paragraph 1105, as waste, or free of duty as samples under Title III, section 308, paragraph 4, of said act. There was also a further alternative claim under paragraph 1310 thereof. The court below sustained the protests and held the goods dutiable as claimed under said paragraph 1119. From that judgment the Government appeals, insisting here upon the correctness of the collector's classification.

The essential portions of the statute involved are as follows:

1109. Woven fabrics, weighing more than four ounces per square yard, wholly or in chief value of wool, * * * valued at more than 80 cents but not more than $1.50 per pound, 45 cents per pound upon the wool content thereof and 50 per centum ad valorem;

1119. All manufactures not specially provided for, wholly or in chief value of wool, 50 per centum ad valorem.

It is not controverted that the goods involved here were woven, and weighed, when imported, more than 4 ounces per square yard and were valued at more than 80 cents per pound. It only remains, therefore, to be seen whether they were "fabrics," within the meaning of said paragraph 1109, for if they were fabrics, such designation must be held to be more specific than manufactures of wool. *Rogers v. United States*, 14 Ct. Cust. Appls. 51, T. D. 41552.

When these goods were imported, they had been manufactured for a definite purpose and were fully dedicated to the use, at the time of importation, of aiding in the sale of merchandise of which they were representative. *Vandegrift & Co.* v. *United States*, 12 Ct. Cust.

Appls. 230 (237). They were, therefore, advanced from the stage of raw materials and had become samples.

It is contended by the appellee that the term "woven fabrics," as it appears in said paragraph 1109, must be held to mean cloth or fabrics, in the piece, while it is as vigorously insisted by the Government that whether the samples in issue be considered as fabrics in the piece, or articles, they are classifiable as woven fabrics under said paragraph. It, therefore, becomes necessary to inquire what meaning shall be attached to the term "fabrics."

Webster's New International Dictionary thus defines the word "fabric":

> Fabric, n. 5. Anything manufactured; in modern use, only, cloth that is woven or knit from fibers, either vegetable or animal; manufactured cloth; a textile fabric; as silks, or other fabrics.
>
> 6. The material of which a fabric is made.

This meaning, we believe, is the one generally applied to the word "fabric" when used in customs laws, by the courts, when a different construction is not necessitated by an apparent legislative intent.

In *Arnold* v. *United States*, 147 U. S. 494, the contest was between the applicability of paragraph 396 of the tariff act of October 1, 1890, providing for clothing and articles of wearing apparel made up or manufactured of wool, and paragraph 392 of the same act, providing for knit fabrics of wool. The goods in question were knit woolen shirts, drawers, and hosiery. The court said:

> Clothing and articles of wearing apparel are more specific than cloths and knit fabrics. Out of cloths and knit fabrics clothing and wearing apparel are made.

Later the court said:

> For while they are frequently interchangeable, it would seem as though "knit goods" more appropriately described manufactured articles; while "knit fabrics" referred more especially to manufactured material, piece goods. Thus in the subsequent description, in paragraph 396, are these words, "plushes and other pile fabrics."

The court held the goods to be clothing as provided in said paragraph 396.

In T. D. 41115, 48 Treas. Dec. 207, woolen upholstery fabrics were involved and the question of their dutiability under said paragraph 1109 was in question, as competing with said paragraph 1119. The cloth in question was woven in a series of designs for use in chair and sofa backs, which were not separated by a line or other division in the cloth. The court held them to be more specifically described as woven fabrics. On appeal to this court, Hatfield, J., speaking for the court, called attention to the fact that the identity of the individual articles in the fabric was not fixed with certainty, and, while not determining that particular question, said:

> Accordingly, accepting, for the purposes of this case, the argument advanced by counsel for appellant, that the term "woven fabrics" contained in paragraph

1109, *supra*, is limited to material in the piece, we are forced to the conclusion reached by the trial court that the merchandise in question is *eo nomine* provided for in that paragraph.    *Rogers* v. *United States, supra.*

Various authorities are cited here as to the construction of similar language under preceding statutes.    We believe, however, that we need not look beyond the text of other provisions of the Tariff Act of 1922 to arrive at the conclusion that the term "woven fabrics" as it appears in paragraph 1109 was intended to apply to material only and not to articles manufactured therefrom.

In Schedule 11 of said act, Wool and manufactures of, raw wool is fully covered by paragraphs 1101 and 1102, waste of all kinds by paragraph 1105, advanced wool by paragraph 1106, yarn by paragraph 1107, woven fabrics by paragraphs 1108 and 1109, pile fabrics and manufactures thereof by paragraph 1110, blankets and similar articles by paragraph 1111, felts by paragraph 1112, fabrics with fast edges and *articles made therefrom* by paragraph 1113, knit fabrics and certain knitted articles by paragraph 1114, clothing by paragraph 1115, carpets and rugs by paragraphs 1116, 1117, and 1118, and, finally, all manufactures not specially provided for, by paragraph 1119.

Here is a complete and well developed scheme for the classification of wool and wool products, by which everything, from the raw material, to the most highly manufactured product, may be reached and covered.    In this arrangement, Schedule 11 follows the same general lines pursued in Schedule 9, Cotton manufactures, Schedule 10, Flax, hemp, and jute, and manufactures of, and Schedule 12, Silk and silk goods.

It will be observed that, in Schedule 11, wherever its provisions are intended to cover material as well as articles made therefrom, such intent is plainly stated.    In paragraphs 1108 and 1109, as we have stated, woven fabrics, alone, are provided for.    In paragraph 1110, however, the language is: "Pile fabrics, cut or uncut,    *    *    * *and manufactures, in any form, made or cut from such pile fabrics,* *    *    *"    Again, in paragraph 1113, "fabrics with fast edges" are provided for and then follows "*and articles made therefrom.*"    The conclusion is inescapable that, had the Congressional intent been to include within the term "fabrics" as found in paragraphs 1110 and 1113, articles made therefrom, the additional language including such articles would not have been used.    It reasonably follows that the term "fabrics" having thus twice been given this limited construction by the framers of the law, in this schedule, such limited construction ought to be extended to the same term where elsewhere used in the schedule, unless plainly, a contrary intention appears.

Counsel for the Government call our attention to the provisions of paragraph 1114 as showing a contrary intent.    There the language is: "Knit fabrics in the piece."    From this it is argued that if the lawmakers had intended the term "fabrics" to include material only,

the words "in the piece" would not have been used. While there is some logic in the argument advanced, we are not inclined to agree with the conclusion reached. Paragraph 1114, on examination, will be found to contain four sections. The first covers knit fabrics in the piece; the second, hose, half hose, gloves, and mittens; the third, knit underwear; and the fourth, knit outerwear *and other articles.* Here, again, is a complete scheme for the classification of knitted material and articles. Why the additional language "in the piece" was used can not be said; it may have been to more fully indicate the congressional intent to segregate piece goods within the first section of the paragraph; however that may be, it is plain that such would have been the result whether the words "in the piece" were used or not.

In the opinion of the court, said paragraph 1109 was intended to and does include cloth or material in the piece and not further manufactured. The goods imported here, being articles made from such woven fabrics, and not being specially provided for, were properly classifiable under paragraph 1119 as manufactures of wool.

The judgment of the court below is therefore *affirmed.*