UNITED STATES *v.* DAVIES, TURNER & Co. (No. 3078)[1]

United States Court of Customs Appeals, January 9, 1929

*Charles D. Lawrence,* Assistant Attorney General (*Hugo P. Geisler* and *Philip Stein,* special attorneys, of counsel), for the United States.
No appearance for appellee.

[Oral argument December 3, 1928, by Mr. Stein]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, and BARBER (retired), Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

The importation in the case at bar is invoiced as one bale of blankets. The advisory report of the appraiser states:

The merchandise subject of protest is described on the invoice as "Blankets" and was found upon examination to be such. They are composed of wool and of the sizes and weights as reported upon the invoice.

The collector classified the goods for duty under paragraph 1111 of the Tariff Act of 1922 as blankets wholly or in chief value of wool. The importer protested, claiming the goods to be dutiable under paragraph 1119 of said act as manufactures of wool not specially provided for. The lower court sustained the protest, and the Government has appealed from the resulting judgment.

The relevant provisions of law are as follows:

PAR. 1111. Blankets and similar articles, including carriage and automobile robes and steamer rugs, made of blanketing, wholly or in chief value of wool, not exceeding three yards in length, valued at * * * more than 50 cents but not more than $1 per pound, 27 cents per pound and 32½ per centum ad valorem; * * *.

PAR. 1119. All manufactures not specially provided for, wholly or in chief value of wool, 50 per centum ad valorem.

One witness, Patrick F. Cronin, the purchaser of the imported goods, testified for the protestant in the trial below. His testimony,

---

[1] T. D. 43172.

as it appears in the record, is indefinite and unsatisfactory. He stated, in the first instance, that the imported material is 6½ yards in length and 72 and 60 inches in width. Afterwards he testified that the imported pieces are 6 yards in length and 72 inches in width. There being no sample in the case, and the invoice being silent on this subject, the exact size of the imported material is not ascertainable. The witness further stated that as imported the articles were "bed blankets" and are used for this purpose; that after importation he cuts the material, between two lines therein, into "generally about two" blankets, each 72 inches in width and 84 inches in length, which is the standard size of the single blankets, and binds the cut edges; at once thereafter he stated that he cuts the blankets to make them "3 yards long," or 108 inches. He further testified that he bought the material as blankets and remanufactured it into blankets; that this merchandise is not remanufactured into any other article; that it can be used as a pair of double blankets; that they are not so used in this country, because his blankets are too heavy; that he does not know whether anybody else has sold similar blankets as double blankets without cutting them. Again he stated that he had not tried to sell the merchandise as a pair of blankets, and immediately thereafter that he had tried to do so, but without success.

As has been observed, this testimony is not satisfactory. It does, however, show that the articles are of blanketing material, more than 3 yards long, have no distinct line of demarcation for separation therein, and are intended to be ultimately used for bed blankets.

A case in point is *United States* v. *International Forwarding Co.*, 15 Ct. Cust. Appls. 198, T. D. 42235. There, blanketing material from 4 to 5 yards in length was imported. It was developed by the testimony in that case that the material in about 50 per centum of the cases was cut into single blankets and so sold, and in the remaining portion cut and made up into sport coats, shirts, and the like. The court held the merchandise to be dutiable as manufactures of wool, saying *inter alia:*

Paragraph 1111 fixes the limitation as to the length of blankets that shall be classified thereunder, and the language employed indicates that Congress understood there might be blankets of more than 3 yards in length. If so, they must be classified elsewhere.

There is no claim of any subterfuge for the purpose of evading or avoiding the proper classification of these blankets. If it be assumed that they are suitable and designed, after importation, to be made into two smaller ones, or that, in fact, they serve the purposes of two separate blankets, the classification, nevertheless, must depend upon their condition when imported.

\* \* \* \* \* \* \*

Clearly the blankets here are not within that rule. They are not imported in long running lengths. They are not so made that the identity of two separate blankets is fixed with certainty. In addition to that, the record shows that some 50 per cent of these blankets are used in making garments.

426

Here, as in the case cited, the claim is made that the imported merchandise is, in fact, blankets not exceeding 3 yards in length, imported in the piece, and that, under the doctrine announced in *United States* v. *Buss*, 5 Ct. Cust. Appls. 110, T. D. 34138, *Artistic Weaving Co.* v. *Maguire*, 13 Ct. Cust. Appls. 140, T. D. 40964, and *Rogers* v. *United States*, 14 Ct. Cust. Appls. 51, T. D. 41552, they should be held dutiable as such.

The rule announced in these cases is well summed up in *United States* v. *Buss, supra,* in these words:

The rule of decision is therefore established that where such articles are imported in the piece and nothing remains to be done except to cut them apart they shall be treated for dutiable purposes as if already cut apart and assessed according to their individual character or identity. This follows, however, only in case the character or identity of the individual articles is fixed with certainty and in case the woven piece in its entirety is not commercially capable of any other use.

If it be assumed that blanketing material more than 3 yards in length may be imported in such form as to be dutiable under said paragraph 1111 as blankets not exceeding 3 yards in length, as to which proposition we do not find it necessary to now express an opinion, it is quite evident that the Government has not brought itself within the rule so clearly stated in *United States* v. *Buss, supra.* A consideration of the testimony of Cronin clearly shows this.

In the alternative, the Government argues that if the goods are not properly classifiable as blankets they are dutiable as woven fabrics under paragraphs 1108 and 1109 of the Tariff Act of 1922; that as the importer has not made a proper claim in his protest under these paragraphs he must fail and the collector's classification be sustained. In our opinion, *United States* v. *International Forwarding Co., supra,* disposes of that contention. It was there said:

The Government further contends that these blankets, if not classifiable under paragraph 1111, are properly dutiable under paragraphs 1108 and 1109 of the act, which provide for woven fabrics, wholly or in chief value of wool, of two kinds, one weighing not more than 4 ounces per square yard and the other for such fabrics exceeding that weight. As to this claim, we agree with the board that as the importations are blankets—that is, distinct entities—they have passed beyond the character of woven fabrics and therefore fall within the provision for manufactures wholly or in chief value of wool, not specially provided for.

To a greater degree, perhaps, in the case at bar, the imported merchandise is blankets. No issue is made as to that. The only controverted point is whether each piece of woolen fabric constitutes one or more than one blanket. See, also, in this connection, *United States* v. *Milbank, Leaman & Co.*, 14 Ct. Cust. Appls. 166, T. D. 41693.

The judgment of the court below is *affirmed.*