The judgment of the United States Customs Court is *affirmed*.

UNITED STATES *v.* M. H. ROGERS, INC. (No. 3308)[1]

United States Court of Customs and Patent Appeals, December 1, 1930

*Charles D. Lawrence*, Assistant Attorney General (*Hugo P. Geisler*, special attorney, of counsel), for the United States.

*Walden & Webster* (*Edward F. Jordan* of counsel) for appellee.

[Oral argument October 16, 1930, by Mr. Lawrence and Mr. Jordan]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court.

Certain imported woven upholstery fabrics, in chief value of wool, weighing more than 4 ounces per square yard, and valued at more than 80 cents per pound but not more than $1.50 per pound, were assessed for duty by the collector at the port of New York at 45 cents per pound upon the wool content thereof and 50 per centum ad valorem under paragraph 1109 of the Tariff Act of 1922:

PAR. 1109. Woven fabrics, weighing more than four ounces per square yard, wholly or in chief value of wool, valued at not more than 60 cents per pound, 24 cents per pound and 40 per centum ad valorem; valued at more than 60 cents but not more than 80 cents per pound, 37 cents per pound and 50 per centum ad valorem; valued at more than 80 cents but not more than $1.50 per pound 45 cents per pound upon the wool content thereof and 50 per centum ad valorem; valued at more than $1.50 per pound, 45 cents per pound upon the wool content thereof and 50 per centum ad valorem.

Several alternative claims were made in the protests. However, the only one relied upon here is that the merchandise is properly dutiable as manufactures of wool at 50 per centum ad valorem under paragraph 1119.

PAR. 1119. All manufactures not specially provided for, wholly or in chief value of wool, 50 per centum ad valorem.

` The imported merchandise is represented by Exhibits 1 and 2. That portion represented by Exhibit 1 was manufactured and imported in running lengths of from 30 to 50 yards; while that represented by Exhibit 2 was manufactured and imported in pieces about 54 inches square.

Each exhibit has large woven figures at the bottom and somewhat smaller woven figures at the top. The figures are so arranged that, by cutting between them, the cloth, without further processing, is

made adaptable for use as coverings for backs and seats of chairs, the larger figures representing the seats and the smaller figures the backs.

The involved merchandise is manufactured abroad in accordance with the design, size, and pattern designated by the importer in its order.

With reference to its manufacture and use, the witness, Mark H. Rogers, president of the importing company, testified that the involved merchandise was ordered, designed, manufactured, and imported as backs and seats for chairs; that it is never bought and sold in this country by the yard but always as chair backs and chair seats; that it has no other commercial use; that, although it is not marked to indicate where it is to be cut, it was designed to be, and must be, in order to avoid destruction of the fabric for commercial use, cut between the figures at approximately the same places in each instance, an allowance of an inch or two, however, having been made for chairs varying in size; that it is woven in the piece or in running lengths which contain several chair backs and chair seats for economy in manufacture and for no other reason or purpose; and that, by merely cutting between the figures, the chair backs and chair seats are finished and ready for use as such articles.

The witness, Maurice Greenstein, of Samuel Greenstein & Sons, manufacturers of upholstered furniture, testified that he had been familiar with merchandise of the character of that imported for several years and had used it to upholster chairs. His testimony, which is clear, concise, and positive, fully corroborates that of the witness Rogers as to the character and use of the imported merchandise, and the manner in which it is bought and sold in the United States.

The three witnesses called by the Government were engaged in the manufacture of "upholstery" and "drapery" fabrics. Each testified that the imported merchandise was suitable for use and was commercially used for upholstering chairs, sofas, and davenports, but that its principal and chief use was for upholstering chairs. However, these witnesses were not engaged in the business of upholstering furniture, nor had they made careful investigation in the upholstery trade for the purpose of giving information on the precise issues before the court. They testified merely from recollection of what they had observed. They identified several exhibits in the case as representative of fabrics of American manufacture with which they were familiar. However, these fabrics are not of the same design nor are the figures appearing thereon arranged, as are those in Exhibits 1 and 2, so as to make the merchandise commercially adaptable for use on chairs only.

The court below sustained the protests, holding that the imported merchandise was manufactured in running lengths, or in pieces 54

inches square, for economy in manufacture; that it had to be cut between the figures in order to make it available for any commercial use; that, when cut, it had but one commercial use—covering for the backs and seats of chairs; that the identity of the chair backs and chair seats was fixed with certainty; and that, therefore, the merchandise was properly dutiable as manufactures of wool under paragraph 1119.

It is contended by counsel for the Government that the imported merchandise is susceptible of various uses, namely, for chairs, sofas, davenports, cushions, and screens; that, although the cloth was so designed that a large figure, intended for the seat, appears directly below a smaller figure, intended for the back of a chair, nevertheless, the articles could be and, according to the testimony of the Government witnesses, are used for purposes other than as covering for the backs and seats of chairs. It is also contended that the issues in this case are controlled by the decision of this court in the case of *Rogers* v. *United States*, 14 Ct. Cust. Appls. 51, T. D. 41552. In that case the merchandise involved was described and the evidence summarized in the following language:

The merchandise in question was made by a weaving process, and is in chief value of wool. It was imported in running lengths of from 30 to 50 meters. It has large figures so woven in the cloth as to make it adaptable, by cutting between the figures, for chair, sofa, and davenport backs and seats. It is purchased abroad by the meter and sold in the United States by the yard, for upholstery purposes. It is not marked to indicate where it is to be cut and may be cut anywhere between figures, but not through them. One of the witnesses for the importer testified that the merchandise was not marked to indicate where it was to be cut, "for the distinct reason of giving it more uses."

The court there reviewed the authorities on the subject and, confining its discussion and decision to the merchandise before it and the evidence relating thereto, held that, as the merchandise was designed for making backs and seats for sofas and davenports, as well as for chairs, it could not be said to be chair backs and chair seats, but, on the contrary, was "material designed to be used for covering the backs and seats of furniture," and was dutiable, therefore, as woven fabrics under paragraph 1109.

In the *Rogers* case, *supra*, the identity of the alleged individual articles—chair backs and chair seats—was not fixed with certainty; and, as the imported merchandise was material suitable for use and was used for various commercial purposes, it was held to be dutiable as woven fabrics under paragraph 1109.

However, in the case at bar, the court below has held that the identity of the articles—chair backs and chair seats—has been fixed with certainty, and that the imported fabrics are not commercially capable of any other use. This conclusion, in our opinion, is in accord with the evidence in the case. Accordingly, the articles—chair backs

and chair seats—although imported in running lengths, or in the piece, are properly dutiable according to their individual character or identity. *United States* v. *Buss & Co.*, 5 Ct. Cust. Appls. 110, T. D. 34138. In view of the fact that they are composed in chief value of wool, and, as they are not more specifically provided for elsewhere, they are dutiable as manufactures of wool under paragraph 1119. *United States* v. *Milbank, Leaman & Co.*, 14 Ct. Cust. Appls. 166, T. D. 41693.

The judgment is *affirmed*.