DECORATIVE FABRIC CORP. *v.* UNITED STATES (No. 3764)[1]

---

[1] T. D. 47107.

United States Court of Customs and Patent Appeals, May 21, 1934

*Brown & Carter* (*Allan R. Brown* and *Fred J. Carter*, of counsel) for appellant. *Charles D. Lawrence*, Assistant Attorney General (*Thomas J. Canty* and *Ralph Folks*, special attorneys, of counsel), for the United States.

[Oral argument April 10, 1934, by Mr. Carter and Mr. Folks]

Before GRAHAM, Presiding Judge, and BLAND, GARRETT, and LENROOT, Associate Judges [2]

BLAND, Judge, delivered the opinion of the court:

Certain merchandise, imported at the port of New York, of which ramie was the component material of chief value, was classified under the provisions of paragraph 1012, Tariff Act of 1922, and assessed with duty at 45 per centum ad valorem. The importer protested the said classification and assessment with duty, claiming the merchandise to be dutiable under paragraph 921 or paragraph 1021 of the same act, at 40 per centum ad valorem. At the trial below and and here, the claim under paragraph 921, which is a cotton paragraph, is not relied upon, but importer's protest claim that the goods are dutiable under paragraph 1021 under the provision "all woven fabrics finished or unfinished, and all manufactures of vegetable fiber other than cotton [etc.]" is pressed.

The United States Customs Court, Second Division, in an opinion by Judge Kincheloe, overruled the protests and held the merchandise

---

[2] HATFIELD, J., did not participate in this case.

dutiable as pile fabrics under said paragraph 1012, and from the judgment of said court, importer has appealed here.

The competing provisions read as follows:

PAR. 1012. Pile fabrics, composed wholly or in chief value of vegetable fiber other than cotton, cut or uncut, whether or not the pile covers the whole surface, and manufactures in any form, made or cut from any of the foregoing, 45 per centum ad valorem.

PAR. 1021. All woven articles, finished or unfinished, and all manufactures of vegetable fiber other than cotton, or of which such fibers or any of them is the component material of chief value, not specially provided for, 40 per centum ad valorem.

According to the report of the collector, his classification was made in harmony with the appraiser's special report. The reports of the collector and the appraiser follow:

REPORT OF THE COLLECTOR

\*       \*       \*       \*       \*       \*       \*

Duty was assessed at the rate provided in the Tariff Act of 1922 for imported merchandise of the kind described by the entry or returned by the appraiser on the invoice. Note the appraiser's special report herewith.

ANSWER TO PROTEST

\*       \*       \*       \*       \*       \*       \*

The merchandise in question consists of \* \* \* pile fabrics or articles composed in chief value of vegetable fiber other than cotton, returned as such at 45% ad valorem under par. 1012.

Representing the imported merchandise is Exhibit 1, which consists of a little more than 2 feet of pile-fabric cloth cut from across the entire width of the bolt, which bolt was approximately 4 feet wide. The exhibit, therefore, is about 4 feet one way, between the selvedged edges and about 2 feet between the cut edges. Two large scroll-shaped figures in various colors cover about one half of the surface of the exhibit and are arranged side by side about 10 inches apart. The cloth contains no mark to indicate where the same is to be cut. The face surface of the remaining portion of the exhibit is of a darker color than the large scroll-shaped figures and contains small figures in colors.

The testimony shows that the merchandise comes in bolts 40, 50, or 60 yards in length, and that the same designs or patterns are repeated throughout the whole bolt, and that the bolt ends with a completed pattern. Exhibit 1 contains two complete patterns and if it were cut in the center of the 10-inch space between the two patterns, two equal-sized, substantially square pieces of pile cloth would be produced, upon each of which would be one complete scroll pattern above described. Other exhibits illustrate the cloth when cut into single patterns as last above indicated.

The record shows that this material is used for upholstery on "furniture, chairs, sofas." One of the Government's witnesses, Leon S. Fox, a salesman for a mill manufacturing upholstery and

drapery material, stated that it is used to make cushions and is used exclusively on sofas and chairs, and that the cushions to which he referred were the loose back and loose seat cushions which take the place of upholstery; that the seats and backs, which he called cushions, of such furniture were removable; that this merchandise is ordered and sold by the yard, and when so ordered and sold it is understood, in the trade, that whatever yardage is delivered should include a certain number of complete panels, and that it is understood that a definite amount of yardage gives a "certain number of repeats, according to the size of the repeats."

Edward J. Burke, witness for the Government, testified that he had seen fabrics like Exhibit 1 applied to the use of making pillow tops and screen tops, on screens placed in front of fireplaces, and that the pillows he referred to were lounge pillows or such pillows as are "pillows collected around the room and thrown promiscuously on furniture." He furthermore stated that cutting through the middle of a panel would not render the cloth worthless as it could still be used to cover the boxing or around the sides, and also to cover the remaining portions of the furniture. The record indicates that cloth of the character at bar containing different-sized figures and different-colored figures might be ordered and used on different articles of furniture depending on the size and colors desired.

We think the record as a whole shows that the articles at bar are chiefly and substantially used and intended for use as material to form the backs and seats of chairs and sofas either in pillow form or as upholstery on such furniture.

It is the contention of the Government that the Customs Court properly held that the decision in this case is governed by the rule laid down in *Rogers* v. *United States*, 14 Ct. Cust. Appls. 51, T.D. 41552, which is hereinafter referred to as the first *Rogers* case, while it is the contention of the importer that this case is controlled by a later decision of this court, *United States* v. *M. H. Rogers, Inc.*, 18 C.C.P.A. (Customs) 271, T.D. 44448, which will be hereinafter referred to as the second *Rogers* case.

This leads us to a consideration of this court's holdings in the two cases above referred to. Both opinions by this court were delivered by the same judge, and it is not thought that the second decision is in conflict with the first decision, or that the second decision was intended to be a modification or a reversal of the first.

In the first *Rogers* case the merchandise was very carefully described by the court, and we quote the following from the opinion:

The merchandise in question was made by a weaving process, and is in chief value of wool. It was imported in running lengths of from thirty to fifty meters. It has large figures so woven in the cloth as to make it adaptable, by cutting between the figures, for chair, sofa, and davenport backs and seats. It is purchased abroad by the meter and sold in the United States by the yard, for up-

holstery purposes. It is not marked to indicate where it is to be cut and may be cut anywhere between figures, but not through them. One of the witnesses for the importer testified that the merchandise was not marked to indicate where it was to be cut, "for the distinct reason of giving it more uses."

\* \* \* \* \* \* \*

Exhibit 1–A represents that portion of the importation used for upholstering the backs of chairs, sofas, and davenports. Exhibit 1–B is used for upholstering the seats of such articles. When used for upholstering chairs the importation is cut so as to make only one of the figures in the fabric of each exhibit available for use. When it is desired to make the material available for use in upholstering sofas a longer piece of the material is required, usually containing two figures. When used on a davenport, at least three figures are required. It is at once apparent that the imported merchandise has not been so processed as to commit it to a single use. It may be used for at least three separate and distinct uses.

A fabric containing eighteen figures may be cut so as to produce eighteen chair backs, or seats, as the case may be, or it may be cut so as to produce nine sofa backs or seats, or six davenport backs or seats. It appears, therefore, that the "identity of the individual article" *is not* "fixed with certainty." The woven fabric may be, and is, commercially used for more than one purpose. The manufacturer deliberately and designedly refrained from marking it for cutting, as stated by one of the witnesses for the appellant, "for the distinct reason of giving it more uses." The importation does not consist of chair backs or seats, but is a material designed to be used for covering the backs and seats of furniture. Accordingly, accepting, for the purposes of this case, the argument advanced by counsel for appellant, that the term "woven fabrics" contained in paragraph 1109, *supra*, is limited to material in the piece, we are forced to the conclusion reached by the trial court that the merchandise in question is *eo nomine* provided for in that paragraph.

The opinion in the first *Rogers* case followed the reasoning in the case of *United States* v. *Buss & Co.*, 5 Ct. Cust. Appls. 110, T.D. 34138, and contained the following language quoted from that case:

\* \* \* [where] articles are imported in the piece and nothing remains to be done except to cut them apart they shall be treated for dutiable purposes as if already cut apart and assessed according to their individual character or identity. This follows, however, *only in case the character or identity of the individual articles is fixed with certainty and in case the woven piece in its entirety is not commercially capable of any other use.* (Italics ours.)

The decision in the first *Rogers* case was based upon the proposition that under the proof in that case the woolen fabrics were not individual articles known as chair backs, sofa backs, or davenport backs, for the reason that the "identity of the individual article" was not "fixed with certainty." The fabrics in that case were imported in running lengths and contained large figures so woven as to make the fabrics adaptable, but cutting between the figures, for chair, sofa, and davenport backs and seats, were sold by the yard, and had no marks indicating where they were to be cut.

In the second *Rogers* case, certain woolen woven upholstery fabrics were under consideration. Some of them were imported in running lengths and some were imported in square pieces. Each kind had a large woven figure at the bottom and a somewhat smaller woven

figure at the top, with the figures so arranged that by cutting between them, the cloth, without further processing, was made adaptable for use as coverings for backs and seats of chairs, the larger figures representing the seats and the smaller figures the backs. The fabric was manufactured abroad in accordance with the design, size, and pattern designated by the importer in its order. The proof in that case showed that it was never bought and sold in this country by the yard but always as chair backs and seats and that the material had no other commercial use, and that although it was not marked to indicate where it was to be cut, it was designed to be cut, and must be cut, in order to avoid destruction of the fabric for commercial use, between the figures at approximately the same place in each instance, an allowance of an inch or two, however, having been made for chairs varying in size. The testimony furthermore was to the effect that by merely cutting between the figures the chair backs and chair seats were finished and ready for use on those particular articles.

In the second *Rogers* case, the facts in which we have last above detailed, the court distinguished the case then at bar from the first *Rogers* case and said:

In the *Rogers* case, *supra*, the identity of the alleged individual articles—chair backs and chair seats—was not fixed with certainty; and, as the imported merchandise was material suitable for use and was used for various commercial purposes, it was held to be dutiable as woven fabrics under paragraph 1109.

However, in the case at bar, the court below has held that the identity of the articles—chair backs and chair seats—has been fixed with certainty, and that the imported fabrics are not commercially capable of any other use. This conclusion, in our opinion, is in accord with the evidence in the case. Accordingly, the articles—chair backs and chair seats—although imported in running lengths, or in the piece, are properly dutiable according to their individual character or identity. *United States* v. *Buss & Co.*, 5 Ct. Cust. Appls. 110, T.D. 34138. In view of the fact that they are composed in chief value of wool, and, as they are not more specifically provided for elsewhere they are dutiable as manufactures of wool under paragraph 1119. *United States* v. *Milbank, Leaman & Co.*, 14 Ct. Cust. Appls. 166, T.D. 41693.

The trial court in the instant case made the following statement:

We have read the testimony introduced by the plaintiff and defendant in the present case very carefully, and while all of the facts brought out herein are not in every particular the same as those in the case cited, *supra*, we think, on the whole, the testimony brings the case directly within the rule of the case of *Rogers* v. *United States*, cited *supra*, rather than within the later case of *United States* v. *M. H. Rogers, Inc.*, cited *supra*. In our opinion, the testimony undoubtedly shows that the imported fabrics can be used as chair backs and as chair seats, and also for covering sofas or davenports by using two or more repeats or lengths of the same pattern. There is also some testimony by defendant's witnesses that the merchandise may—or was also used for pillow tops or screen tops, although it was admitted that this latter was only occasional. * * *

We agree with the foregoing finding of the trial court. We are of the opinion that the record before us shows that the imported merchandise falls within the controlling influence of the first *Rogers* case.

It is our view that the identity of the alleged individual articles claimed to be chair backs and chair seats, and sofa backs and sofa seats, has not been fixed with certainty, and that the imported material is not provided for in paragraph 1021, but is a pile fabric in chief value of ramie, and dutiable at 45 per centum ad valorem under paragraph 1012.

In the trial court's opinion is found the following statement:

\* \* \* A comparison of the official exhibit in the earlier *Rogers* case seems to show it to be practically of the very same character as exhibit 1 in the instant case, so far as the size of the design or pattern is concerned and its probable uses.

In this court appellant in its brief argues that the trial court committed reversible error in basing its decision on the likeness between the samples in the case at bar and those in the first *Rogers* case, since the record in the said first *Rogers* case was not properly before it. We find, however, that there is no assignment of error in the record which would warrant our passing upon this contention of the appellant.

The judgment of the United States Customs Court is *affirmed.*