## UNITED STATES v. BUSS & Co. (No. 1262).[1]

COAT HANGERS NOT TAPES.

The merchandise consists of running lengths of woven cotton strips with cross marks appearing at short intervals to indicate the points for cutting the strips into small pieces suitable for use as coat hangers. The uncontradicted testimony is to the effect that the merchandise has been for a number of years used exclusively for coat hangers and that there is no other use to which they are commercially applied. They were not dutiable as tapes but as manufactures of cotton not specially provided for under paragraph 332, tariff act of 1909.

United States Court of Customs Appeals, January 22, 1914.

APPEAL from Board of United States General Appraisers, Abstract 33475 (T. D. 33727).

[Affirmed.]

*William L. Wemple*, Assistant Attorney General (*Martin T. Baldwin*, special attorney, on the brief), for the United States.

*Brown & Gerry* for appellees.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The merchandise involved in this case consists of narrow strips of woven fabric made of cotton, black in color, about one-third of an inch in width, and imported in running lengths. The article has the appearance of ordinary cotton tape except that at intervals about 3 inches apart appear certain cross marks or ridges produced in the weaving. The purpose of the cross marks is to indicate the points at which the article may be cut in order to produce small pieces of equal length suitable for use as coat hangers.

The appraiser reported the merchandise to be "coat hangers in the piece, which is in fact cotton tape," and advised assessment thereof as tapes composed of cotton under paragraph 349 of the tariff act of 1909. The collector accordingly assessed the importation with duty at 60 per cent ad valorem as cotton tape under that paragraph.

The importers protested, claiming assessment of the article as a manufacture of cotton not specially provided for, dutiable at 45 per cent ad valorem under paragraph 332 of the same act.

The protest was submitted to the Board of General Appraisers and was sustained, from which decision the Government now appeals.

It is not necessary to copy the paragraphs of the act under which the competing claims are made. It is sufficient to state that paragraph 349 imposes duty at the rate of 60 per cent ad valorem upon cotton "tapes," and that paragraph 332 imposes duty at the rate of 45 per cent ad valorem upon "manufactures of cotton not specially provided for." If the articles at bar are tapes they would be dutiable as such under paragraph 349; if they are not tapes they would be dutiable as manufactures of cotton not specially provided for under paragraph 332. Therefore the sole question at issue is whether the importation consists of tapes.

---

[1] Reported in T. D. 34138 (26 Treas. Dec., 171).

The following definitions of the word "tape" are taken from standard authorities:

Century:

2. A narrow strip of linen or of cotton, white or dyed of different colors, used as string for tying up papers, etc., or sewed to articles of apparel, to keep them in position, give strength, etc.

Webster:

A narrow fillet or band; a narrow piece of woven fabric used for strings and the like.

Standard:

A narrow, stout strip of woven fabric, forming a flat cord; much used for tying together various parts of apparel, or binding different objects in parcels; also in printing presses and paper-folding machines for guiding the movement of paper.

Worcester:

A narrow fillet or band, usually of cotton or linen, and used for tying or binding, etc.

It appears from the record that when the appraiser came to pass upon the identity of the present merchandise he described it as "coat hangers in the piece, which is in fact cotton tape." The appraiser also retained an official sample of the merchandise, which he incorporated in the record under the name of "coat hangers in the piece." It appears from the oral testimony that the present importer has dealt in these articles for the last 14 years, that they are intended to be cut into pieces at the cross marks, that they are "coat hangers," and that they have no other use.

The term "coat hangers," therefore, is used alike by the appraiser and the importer to signify short lengths of narrow fabric which are sewed upon garments and serve as catches in hanging them upon hooks. It seems to be assumed by both the appraiser and the importer that such coat hangers, if cut apart, would not be tape in the tariff sense nor dutiable under that name. But the appraiser reports that the "coat hangers in the piece" are "in fact cotton tape," whereas the importer maintains that the coat hangers in the piece are not tape but are coat hangers nevertheless.

The apparent assumption just referred to, namely, that coat hangers, if cut apart, would not be dutiable as tape, is certainly well founded; for such short pieces of narrow fabric would not serve any of the purposes for which tape is ordinarily used according to the definitions above given. To the contrary, such short lengths would be unfitted for those uses and would be useful only as coat hangers. Furthermore, it is within common knowledge that such short pieces do not in general pass under the name of tape; and there is no proof in the record of any special or peculiar commercial usage of that term. It is therefore proper to assume that the common and commercial usages of the term are identical. It may therefore be concluded that coat hangers, if cut apart, would not be dutiable as tape, and the sole

question in the case is whether they are dutiable as tape if imported in the piece.

In connection with the foregoing question some authorities may be cited from analogous cases.

In the case of Oppenheimer v. United States (66 Fed., 52) silk veils in the piece, with borders upon them, and a distinctly marked line between the borders indicating where they were to be cut off, were held by the Circuit Court of Appeals, Second Circuit, to be dutiable as wearing apparel and not as manufactures of silk not specially provided for. In other words, veils in the piece were held to be dutiable as veils, under the provision for wearing apparel. The provision in question contained the clause, "made up or manufactured wholly or in part by the tailor, seamstress, or manufacturer," and this clause is referred to as the italicized portion of the paragraph, in the following quotation.

LACOMBE, *Circuit Judge:* * * * The merchandise imported in this case is clearly within the italicized portion of this paragraph. It is made up "in part," the operation of making up having progressed so far that it is easy to identify the particular article of wearing apparel it is to be, and the materials out of which it is made being rendered, so far as the evidence shows, practically useless for any other purpose. In this respect it differs from *In re* Mills (56 Fed., 820), where the hemstitched lawns were as well adapted for use as window curtains as they were for women's skirts and aprons. Veils are manifestly wearing apparel, and these goods, being veils which only need to be cut off from the piece in order to be ready for use, were properly classified for duty as such.

In the case of Robinson v. United States (122 Fed., 970), it was held by the Circuit Court, Southern District of New York, that so-called mourning crapes consisting of all-silk fabrics in the piece, used chiefly for trimmings, were dutiable as silk trimmings and not as woven fabrics in the piece.

In the Fleitmann case (T. D. 22561), the Board of General Appraisers held that ribbons composed of silk and cotton, silk chief value, woven in the gray or gum in the piece, in different widths, indicated by the absence of filling threads, and requiring only to be cut after dyeing to separate them into individual ribbons, were to be classified the same as ribbons not in the piece.

In the Kaskel case (T. D. 26613), the Board of General Appraisers held that men's silk scarfs imported in pieces of various lengths, each scarf being definitely indicated by the absence of warp and filling threads at intervals where they have only to be cut to separate them into individual scarfs, and which are adapted for no other use than scarfs, are dutiable as "articles of wearing apparel * * * made up or manufactured in whole or in part by the tailor, seamstress, or manufacturer."

See also the Spielmann case (T. D. 15866), silk veils in the piece the Modry case (T. D. 15867), printed cotton bibs in the piece; and the Wolff case (T. D. 20047), narrow woven strips of white cotton

with single letters of the alphabet therein with colored threads at intervals of about half an inch.

On the other hand, in the case of *In re* Mills (56 Fed., 820), relating to cotton hemstitched lawns imported in pieces of from 28 to 30 yards in length and 45 inches in width, having a broad hem about 5 inches wide turned over and sewed down on one side of the fabric, the body of the goods being a homogeneous cotton cloth, containing from 150 to 200 threads to the square inch, counting warp and filling, but openwork patterns or figures made by drawing out threads appearing continuously upon certain parts of the goods, the merchandise being chiefly used for women's and girls' dresses, skirts, and aprons, the broad hem constituting a part of such garments when made up, *but the materials being also sold for sash curtains,* it was held by the Circuit Court, Southern District of New York, that the lawns were properly dutiable as manufactures of cotton and not as partly made cotton wearing apparel.

The rule expressed by the decisions just cited recognizes the fact that most small articles are not produced as individual or separate products of the loom, but for economy of manufacture are first woven "in the piece." The rule of decision is therefore established that where such articles are imported in the piece and nothing remains to be done except to cut them apart they shall be treated for dutiable purposes as if already cut apart and assessed according to their individual character or identity. This follows, however, only in case the character or identity of the individual articles is fixed with certainty and in case the woven piece in its entirety is not commercially capable of any other use.

According to the foregoing rule the present decision should depend upon whether the articles at bar are commercially sold and used exclusively for coat hangers or whether they are at times commercially sold and used as tapes. For if the articles are best adapted for use as coat hangers, but nevertheless are at times commercially sold and used in the piece as tapes, then they should be assessed when in the piece with duty as tapes. This question of course is one of fact to be determined upon the testimony, including the appraiser's report and the samples. In answer to this question it appears by the uncontradicted testimony in the case that the present articles during the past 14 years have been used exclusively for coat hangers and that there is no other use to which they are commercially applied. It is true that the articles are not absolutely incapable of use in the piece as tapes; nevertheless the cross marks which have been woven into them are unnecessary and even detrimental to such uses. The articles are thereby not only especially adapted to their peculiar use as coat hangers, but they are also appropriated thereunto, for it is plain that they would no longer pass as ordinary tapes. These cir-

cumstances lend probability to the statement of the witness that the articles are in fact used for no other purpose than coat hangers. It is true that the demarcations between the several coat hangers in the piece are not so obvious to the eye as are those described in many of the cited cases; nevertheless they serve the same purpose and bring the case within the same rule. The present fabric is narrow and black; the cross marks also are black, and are therefore inconspicuous. If the goods were one color and the cross marks were another the divisions would be more obvious. This, however, would add to the cost of the article and would not add to its utility as coat hangers. The inconspicuousness of the cross marks, therefore, is not evasive, and it appears without contradiction in the testimony that the merchandise is designed to be used exclusively as coat hangers and is in fact exclusively used as such. According to the principles expressed by the foregoing cases the court concludes upon the facts that the present importations are not dutiable as tapes but as manufactures of cotton not specially provided for, and that the decision of the board to that effect should be affirmed.

In support of this conclusion two suggestions may be added: First, the importer is entitled at assessment to the benefit of the doubt; second, the decision of the board upon the question of fact involved in the case is to be accepted as correct by this court unless clearly contrary to the evidence or unsustained by it.

The decision of the board is *affirmed.*