St. Andrews Textile Co., Inc. *v.* United States (No. 4476)[1]

United States Court of Customs and Patent Appeals, December 11, 1944

*Jordan & Klingaman* (*J. L. Klingaman* and *Edward F. Jordan* of counsel) for appellant.

*Paul P. Rao*, Assistant Attorney General (*Alfred A. Taylor, Jr.*, of counsel), for the United States.

[Oral argument October 4, 1944, by Mr. Jordan and Mr. Taylor]

Before Garrett, Presiding Judge, and Bland, Hatfield, Jackson, and O'Connell, Associate Judges

Garrett, Presiding Judge, delivered the opinion of the court:

This is an appeal from a judgment rendered by the United States Customs Court (Second Division) overruling the protest of the importer whereby recovery is sought of a portion of the duties collected pursuant to assessment upon an importation of merchandise, described on the consular invoice as "All Wool Muffler Cloth," entered in April 1941.

The general character of the merchandise is readily determinable from exhibits introduced in evidence taken together with the testimony of the president of the importing company. It is described in the brief on behalf of appellant before us as follows:

The merchandise consists of bolts of woven wool goods 65 inches in width. The weaving was done in such manner that by a process of cutting mufflers may be

---

[1] C. A. D. 294.

produced therefrom. This result was obtained by weaving a binding thread known as a selvage in the warp every 13 inches, so as to indicate the width of the mufflers desired, and by omitting a number of weft threads at intervals which omission determines the length of the mufflers. By cutting along the selvages and across the warp where the weft threads are omitted finished mufflers are produced. It is customary to cut across the warp where the filling has been omitted in such a way as to leave loose ends of the warp threads on each muffler.

To the above description it may be added that the loose ends of the warp threads left after cutting across the warp where the weft (or filling) threads have been omitted constitute a fringe at each end of the muffler.

It seems to have been described by the appraiser as "Unfinished Wool (Woven) Wearing Apparel self-fringed," and classification was made under paragraph 1529 (a) of the Tariff Act of 1930 with duty assessment at 90 per centum ad valorem. While it is not specifically so stated, it seems obvious that the collector in making the classification treated the merchandise as fabrics or articles composed in part of fringes. Paragraph 1529 (a) reads in part as follows:

Laces, * * * veils, * * * fringes, * * * all the foregoing, and fabrics and articles wholly or in part thereof, finished or unfinished * * * 90 per centum ad valorem.

The claim relied upon by the importer is for classification under the language of paragraph 1115 (a) reading:

Clothing and articles of wearing apparel of every description, not knit or crocheted, manufactured wholly or in part, wholly or in chief value of wool, * * * valued at more than $4 per pound.

In the act as originally passed the duty assessment provided for merchandise so classifiable was 50 cents per pound and 50 per centum ad valorem, but by the trade agreement between the United States and the United Kingdom—T. D. 49753—the ad valorem rate was changed to 30 per centum.

It is our view that the correct conclusion was reached by the trial court for the reasons which we state as follows:

If, before importation, the mufflers had been cut from the bolts along the lines clearly indicated in the woven product and imported as individual entities, such mufflers would have been in part of fringes although the fringes were produced in the process of weaving and had no existence independent of the other parts of the fabric.

In the case of *Alfred Kohlberg, Inc.* v. *United States*, 27 C. C. P. A. (Customs) 354, C. A. D. 111, the merchandise involved consisted of gloves having lace cuffs, the glove part and the lace part produced together in a continuous process of manufacture. The merchandise had been classified by the collector under paragraph 1529 (a) of the Tariff Act of 1930. The decision of the case required construction of paragraph 1529 (a) upon the point of whether, for duty purposes, lace constituting a part of an article should have had an existence inde-

pendent of the process of making of the article. It was construed as follows:

It is our view that Congress never intended that the provision "articles * * * in part thereof" should be given such an interpretation as to make it subject to the application of the said principle of a preexisting component material, and the language of the provision, we think, clearly implies that a thing may be a part of the article referred to even though the part was produced in connection with the production of the article itself.

Subsequently in the decision it was held:

In view of the interpretation which we have herein given the controverted provision, it follows that the gloves at bar, which are in part of lace, were properly classified under paragraph 1529 (a), *supra*, notwithstanding the fact that the lace portions of the gloves are shown not to have had an existence separate from the gloves themselves.

Since the statute (par. 1529 (a)) uses the term "fringes" in the same connotation that it uses the term "laces," the construction of the statute there made is here controlling. It follows, therefore, that mufflers having ends composed of fringes produced in the process of weaving must be considered as being in the same category, for customs duty purposes, as mufflers having independently produced fringes attached to them.

So far, our statement has been directed to the point that it is immaterial, for the purpose of customs duty, whether the fringes constituting a part of a muffler were made in the manufacture of the muffler itself, or made as an independent entity and subsequently attached to the muffler.

In so doing we have treated the merchandise as if it had been imported cut into form as mufflers. It was not imported in such condition, however, and it must be determined whether the condition in which it was imported affects its dutiable status.

It must be borne in mind that the bolts of cloth were designedly woven for the purpose of being cut into finished mufflers. The merchandise was manufactured for and dedicated to that particular use. By weaving into the warp a binding thread referred to as a selvage a line was definitely fixed for determining width, and the length was fixed by omitting a number of weft threads at regularly spaced intervals. The only process required to be applied after importation in order to produce a finished muffler with fringed edges was that of cutting along lines clearly indicated in the woven bolt by the weaving process itself.

In its decison the trial court directs attention to decisions in certain cases, the first being that of *Oppenheimer et al.* v. *United States*, a decision of the Circuit Court of Appeals, Second Circuit, rendered in 1895, 66 Fed. 52, in which the merchandise was described as follows:

The goods in question are silk veils in the piece. They come in rolls several yards in length, but are ornamented with a succession of borders, each surrounding

a portion of the fabric of a size suitable for a veil. A series of veils are thus marked out, defined, and designated by these borders, and, although not separated from each other at the time of importation, are adapted for no other use than as veils, and only need cutting apart to make them completed veils. The dividing line of each separate veil is plainly indicated, and the fabric can be cut only between the veils without destroying the design. They are manufactured, adapted, and intended for veils, and for nothing else.

It was there held that:

* * * Veils are manifestly wearing apparel, and these goods, being veils which only need to be cut off from the piece in order to be ready for use, were properly classified for duty as such.

The second decision cited by the trial court is one by this court in the case of *United States* v. *Buss & Co.*, 5 Ct. Cust. Appls. 110, T. D. 34138 (26 Treas. Dec. 171). The merchandise there involved is described in the decision as follows:

The merchandise involved in this case consists of narrow strips of woven fabric made of cotton, black in color, about one-third of an inch in width, and imported in running lengths. The article has the appearance of ordinary cotton tape except that at intervals about 3 inches apart appear certain cross marks or ridges produced in the weaving. The purpose of the cross marks is to indicate the points at which the article may be cut in order to produce small pieces of equal length suitable for use as coat hangers.

This court cited and discussed a line of judicial decisions, and after such discussion said:

The rule expressed by the decisions just cited recognizes the fact that most small articles are not produced as individual or separate products of the loom, but for economy of manufacture are first woven "in the piece." The rule of decision is therefore established that where such articles are imported in the piece and nothing remains to be done except to cut them apart they shall be treated for dutiable purposes as if already cut apart and assessed according to their individual character or identity.

In addition to the foregoing cases we direct attention to the case of *United States* v. *M. H. Rogers, Inc.*, 18 C. C. P. A. (Customs) 271, T. D. 44448. The merchandise there involved consisted of upholstery fabrics manufactured and imported in running lengths, with large woven figures at the bottom and somewhat smaller woven figures at the top, so arranged that, by cutting between the figures, the fabrics without further processing were made adaptable for use as coverings for backs and seats of chairs, this being the only commercial use to which they were adapted. We held such fabrics properly dutiable according to their individual identity as chair backs and chair seats rather than as manufactures of wool.

There were no threads dropped from the woven fabrics there at issue to indicate the lines for cutting, such as are present in the muffler cloth here at issue, the lines there being determinable solely from the figures in the weave.

It may be conceded that the fringe of the instant merchandise

could be entirely cut from the cloth, thus leaving an unfringed article, but it is clear that it was never intended to do this, and there is no showing that it was ever done. The muffler cloth as imported was, as has been indicated, obviously dedicated to the making of fringed mufflers and there is no showing that it had any other commercial use.

We regard the *Kohlberg* case, *supra*, as controlling upon the point that in order to render the merchandise classifiable as fabrics or articles in part of fringe, it was not necessary that the fringe should have had preexistence independently of the remainder of the article. The other decisions cited are thought controlling upon the point that the goods imported in the form described are dutiable at the same rate which would have been applicable had the mufflers been cut to individual form and imported in such condition.

The judgment appealed from is *affirmed*.

BLAND, Judge, dissenting:

I must respectfully dissent from the decision of the majority affirming the action of the trial court which overruled appellant's protest against the action of the collector in assessing the instant merchandise with a 90 per centum ad valorem duty under paragraph 1529 (a) of the Tariff Act of 1930.

The majority feel that our decision in *Alfred Kohlberg, Inc. v. United States*, 27 C. C. P. A. (Customs) 354, C. A. D. 111, is controlling of decision here. In my judgment, that case is not authority for holding that the instant mufflers are in part of fringes so as to throw the merchandise, for duty purposes, into the first part of paragraph 1529 (a).

In the *Kohlberg* case we had before us gloves having a lace cuff. The glove part and the lace part were produced in a continuous process of manufacture, and the lace therefore did not exist prior to its appearance in the finished glove. The term there under consideration was "articles wholly or in part thereof" [laces]. The same provision is involved here, except that we are concerned with "fringes" rather than with "laces." In that case, it was the position of the Government that the phrase "wholly or in part thereof" necessarily required a holding that the gloves fell within the paragraph, irrespective of the fact that the lace had no previous existence. The importer contended that under the holding of this court in many cases, such as *Cohn & Lewis v. United States*, 25 C. C. P. A. (Customs) 220, T. D. 49335, and the so-called ladder tape cases referred to therein, and many others, before the merchandise was drawn into the paragraph it must be shown that the lace had a prior existence and that it must have been of such character that, if imported by itself, it would have been dutiable at 90 per centum ad valorem.

At great length we pointed out in the *Kohlberg* case that wherever

in tariff acts such terms as "made in whole or in part of," or "made or cut from," or "manufactures of," or "made of," or "articles made therefrom," or "manufactured wholly or in part of" were used, there must have been a previous existence of the article referred to, independent of its existence in the imported article. We there distinguished the cases involving such terms by pointing out that the provision confronting us there was "articles   *   *   *   in part" of lace. We held that Congress, in using the phrase "articles   *   *   *   in part thereof," did not intend to use it in the sense that the article in controversy had to have a prior existence, such as was true of the wool felt hat bodies in the *Cohn & Lewis* case or of the ladder tapes in the cases in which those articles were under consideration.

The issue in the *Kohlberg* case and the issue here are on all fours, so far as the construction of the phrase "articles wholly or in part thereof" is concerned. It must be conceded that if there are fringes in these uncut bolts of mufflers, then the *Kohlberg* case is controlling. But there were no fringes in the articles when they were brought into this country, and there would not be any fringes at any time unless the user of the cloth wanted fringed mufflers after the importation arrived here. *If there were a line showing that the cutting to form the fringes had to be in the middle of the space where there are no weft threads,* and if it could not practicably be cut in any other manner, then the holding in the *Kohlberg* case might have some bearing on the decision of the instant issue. I respectfully submit, however, that the holding of the majority in the instant case unduly extends the doctrine announced in such cases as *United States* v. *Buss & Co.*, 5 Ct. Cust. Appls. 110, T. D. 34138; *United States* v. *M. H. Rogers, Inc.*, 18 C. C. P. A. (Customs) 271, T. D. 44448; and *Oppenheimer et al.* v. *United States*, 66 Fed. 52.

The law is well settled under those cases that if goods in the bolt are so made as to be capable of being cut in but one place to form an article, then the customs officials should regard the bolt of cloth as constituting those articles. This was the case with the coat hangers in the *Buss & Co.* case, the chair backs and seats in the *Rogers* case, and the veils in the *Oppenheimer* case. Under the holdings in those cases, the instant merchandise is mufflers and not bolts of woolen cloth. There is no dispute on that question. The majority, however, have applied the doctrine of those cases to the so-called fringed portion of the mufflers so as to throw the merchandise, for classification purposes, into the "fringes" paragraph at 90 per centum duty. This phase of the instant case was not present in the *Kohlberg* case or in any other case that I know of.

In the instant case there is nothing to indicate but that the so-called

fringe threads (2½ inches long) might be cut so as to make no fringe on one muffler and a long fringe on another, or short fringe on one and longer fringe on another. It is my position that the character of the mufflers *with respect to fringes is not fixed with such certainty* as was required in the rule laid down in the *Buss & Co.* case, *supra.* There we said:

> The rule expressed by the decisions just cited recognizes the fact that most small articles are not produced as individual or separate products of the loom, but for economy of manufacture are first woven "in the piece." The rule of decision is therefore established that where such articles are imported in the piece and nothing remains to be done except to cut them apart they shall be treated for dutiable purposes as if already cut apart and assessed according to their individual character or identity. This follows, however, only in case the character or identity of the individual articles is *fixed with certainty* and in case the woven piece in its entirety is *not commercially capable of any other use.* [Italics mine.]

I again repeat that there were no fringes in the article when imported. (There was lace in the gloves in the *Kohlberg* case.) After the instant merchandise arrived in this country, it could have been cut, without wasting any material (because there was no permanent marking in the place where the weft threads were omitted showing where it was to be cut) so as to have made some complete mufflers without fringe and some with fringe. The fact that it was a "customary" practice to cut it in such a way as to have a fringe of some length on each end of each muffler does not change the situation. The levying of customs duties should not depend upon the whim or choice of the importer after the goods arrive. In order to apply the rule laid down in the foregoing cases, *the importer must have no choice; whereas it does have a choice in the instant case.*

In the *Rogers* case, *supra,* where the fabrics were dedicated to chair backs and seats, in the *Oppenheimer* case, where veils were involved, and in the *Buss & Co.* case, where the cloth coat hangers were involved, the instant question relating to prior existence was not present. In each of those cases, the imported goods were so manufactured that they would have been practically valueless for any commercial use except as backs or seats, veils, and hangers, respectively, of a predetermined design. By their very nature their character or identity was fixed with such certainty that they were incapable "of any other use." That is not true here. The so-called fringe threads might not be used to form fringe on some of the mufflers.

Of course the instant goods, under the rules laid down in the above cases, are mufflers, as claimed by the Government; but they are not mufflers in part of fringes.

I would reverse the judgment appealed from.