**No. 54119.**—C. S. Allen Corp. *v.* United States, protests 130886–K and 134559–K (New York).

Ford, Judge: The two protests listed above bring before us for determination the question of the proper classification of certain imported merchandise which was classified as articles of wax-coated paper under paragraph 1405 of the Tariff Act of 1930, and duty was levied thereon at the rate of 20 per centum ad valorem plus 5 cents per pound. Plaintiff claims said merchandise to be properly dutiable at only 15 per centum ad valorem plus 5 cents per pound, or at 15 per centum ad valorem plus 3 cents per pound, under the same paragraph.

The portion of said paragraph 1405 here material is as follows:

Par. 1405. * * * papers wholly or partly covered with metal or its solutions * * * 5 cents per pound and 15 per centum ad valorem; * * * papers with paraffin or wax-coated surface or surfaces, * * * 3 cents per pound and 15 per centum ad valorem; bags, printed matter other than lithographic, and all other articles, composed wholly or in chief value of any of the foregoing papers, not specially provided for, * * * 5 cents per pound and 20 per centum ad valorem; * * *.

At the trial a sample of paper representing the merchandise involved in protest 130886–K was admitted in evidence as illustrative exhibit 1. There was also admitted in evidence a sample representing the paper involved in protest 134559–K invoice No. 741736, which was marked collective exhibit 2.

Illustrative exhibit 3 was admitted in evidence as representing the paper involved in protest 134559–K, invoice No. 744953. In this case the paper is labeled "Allen's Toffee Rumbutus Flavor" and is wrapped around a piece of candy, illustrating the use to which the involved paper is put.

According to the record the paper as imported was in rolls 8 inches in diameter and 3½ inches in width and these rolls were packed about 50 to a crate. All of the paper was "identical in thickness and manufacture, just variations in color." At regular intervals there appear the words "Printed in England," and also "Ingredients: Sugar, Corn Syrup, Condensed Milk, Hardened Vegetable Oil, Salt, and Artificial Flavor." In addition, the green paper, represented by collective exhibit 2, has printed thereon the words "Licorice Toffee," and this is the only one of the five-color variations that had the two words "Licorice Toffee" added.

As to the use to which these rolls of paper are put, plaintiff's witness stated that they "* * * are consumed on a Rose Wrapping Machine, which uncoils by machinery and cuts the paper at the break in the printing about two inches in length to wrap the piece of candy that comes through the machine from the other side, so the paper is wrapped automatically as the candy is cut." The "break" above referred to is the blank spot on the paper between the printed matter.

The object of having on the paper the printing with reference to the ingredients is to meet the requirements of the Pure Food and Drug Act. It was agreed by and between counsel at the trial that all of the involved papers are covered in part with wax and in part with metal or its solutions.

Plaintiff's witness testified on cross-examination that the words "Printed in England" were done by the manufacturer, and where the words "Licorice Toffee" and "Allen's Toffee" appear, they were put there at the request of the plaintiff; that when these rolls are inserted in the machine they are centered in the machine so that the paper is cut right at the space where there is no printing, so that each constitutes an individual label or piece of wrapping paper; that the words on the

individual wrapper show the ingredients of the candy which it is used to wrap; and that these wrappers cannot be used on any piece of candy other than the particular type that is specified on the label.

After a careful examination of the record presented, we are inclined to accept as correct the following statement contained in the brief of counsel for the defendant:

An analysis of the above evidence clearly discloses that through the manufacturing process of printing, the involved merchandise has been transformed into a new and different article with a distinctive name, character and use, to wit, a label or wrapper employed solely as a covering for the particular candy described thereon. It is, therefore, clear that the printing process has changed the merchandise from the status of paper to articles made of paper.

Based upon the facts which the record herein establishes, it is our view that this case is controlled by the principles stated in *C. S. Allen Corp.* v. *United States*, 70 Treas. Dec. 349, T. D. 48543, from which the following is quoted:

As to the law in the premises we regard our decision in *Meadows Wye & Co.* v. *United States*, T. D. 47725, as determinative of the tariff status of the paper which is merely surface-decorated. That case involved rolls of wax-coated paper identical with some of those here imported. We held such rolls to be properly dutiable at the rate of 3 cents each and 15 per centum ad valorem under said paragraph 1405 as "papers with paraffin or wax-coated surface or surfaces", basing our conclusion on the principle enunciated by the appellate court in *Decorative Fabric Corp.* v. *United States*, 22 C. C. P. A. 128, T. D. 47107, and *Cowtan & Tout (Inc.)* v. *United States*, 20 C. C. P. A. 53, T. D. 45678. In other words, notwithstanding one surface thereof has been decorated by a printing process, the merchandise still remains paper. That tariff status was not altered when the paper had imparted to one surface thereof a fancy effect or character.

But the situation is different concerning the rolls with the printed words thereon. Those rolls are in effect composed of individual wrappers or labels imported in strip form. The collector's classification thereof we believe is fully supported by our decision in *J. A. Chambers* v. *United States*, T. D. 37812, G. A. 8208, 35 Treas. Dec. 189.

Referring to the *Chambers* case, cited in the above quotation, we find the following:

The sample introduced in evidence herein shows 45 complete labels printed on a single sheet of paper. These labels, as disclosed by uncontradicted testimony, are cut from the sheet and are used solely as inner coverings or wrappers for a well-known brand of washing blue—a fact concretely demonstrated by the illustrative exhibits herein containing squares of washing blue wrapped in these labels, showing the precise condition in which the blue is offered for sale in our markets.

The printed matter, which is the same on each label, consists of a simple form of trade-mark, a facsimile signature, appropriate words descriptive of the washing blue, and the following statement: "This complete label is registered as well as the device of diamond and crown."

Unquestionably, such a label is not correctly classified under a tariff provision covering a particular kind or class of paper. It is more than mere paper; it is a complete article, with a distinctive name and use, to wit, a label or wrapper, requiring only to be cut from the sheet in order to make it fully adaptable for such use. That this simple cutting requirement can in no sense be held to affect its tariff status as a label is made plain by the rule reiterated and reaffirmed by the United States Court of Customs Appeals in *United States* v. *Buss*, (5 Ct. Cust. Appls., 110; T. D. 34138)—a case which involved the question of the tariff classification of certain narrow strips of woven fabric made of cotton, about one-third of an inch in width, imported in running lengths, which required merely to be cut at certain marked intervals in order to make of them articles suitable for use as coat hangers.

Adverting to the *Buss* case, cited in the *Chambers* case, *supra*, wherein our appellate court, after citing and discussing the cases of *Robinson* v. *United States*, 122 Fed. 970; the *Fleitmann* case, reported in T. D. 22561; the *Kaskel* case, T. D. 26613; the *Speilmann* case, T. D. 15866; the *Modry* case, T. D. 15867; the *Wolff* case, T. D. 20047; and *In re Mills*, 56 Fed. 820, stated:

The rule expressed by the decisions just cited recognizes the fact that most small articles are not produced as individual or separate products of the loom, but for economy of manufacture are first woven "in the piece." The rule of decision is therefore established that where such articles are imported in the piece and nothing remains to be done except to cut them apart they shall be treated for dutiable purposes as if already cut apart and assessed according to their individual character or identity. This follows, however, only in case the character or identity of the individual articles is fixed with certainty and in case the woven piece in its entirety is not commercially capable of any other use.

See also *St. Andrews Textile Co., Inc.* v. *United States*, 32 C. C. P. A. (Customs) 117, C. A. D. 294, and authorities therein cited, wherein our appellate court reaffirmed the principles announced in the *Buss* case, *supra.*

The record in this case establishes that the character and identity of the present articles as wrappers or labels for candy have been definitely and conclusively fixed, and also the roll of paper in its entirety is not commercially capable of any other use. Under this state of facts, no reason is apparent which would justify the classification of these rolls of paper as imported under a tariff provision covering a particular kind or class of paper.

Counsel for the plaintiff cites as supporting its contention herein, the case of *United States* v. *Nippon Yusen Kaisha*, 11 Ct. Cust. Appls. 464, T. D. 39535, wherein the merchandise consisted of blotters printed with appellee's advertisement. Our appellate court held that the printing converted the blotter into something different from what it was before, and held such blotters to be manufactures of paper, but more specifically provided for as printed matter. The court, however, was careful to point out that:

Bibulous paper is unsized paper which readily absorbs moisture and which when cut to appropriate dimensions may be used as blotting paper. * * * Bibulous paper which is merely cut to size for blotters acquires a new name, but as it is not thereby fitted for a new use and undergoes no manufacturing process which renders it unsuitable for use as bibulous paper, it continues to be bibulous paper and is therefore not an article manufactured from that kind of paper.

The appellate court, however, held that:

When, however, bibulous paper is not only cut to size, but is printed, it ceases to be available for all the uses to which such paper may be devoted and is fitted for a use which is not characteristic of unprinted bibulous paper. The printing of bibulous paper transforms it into a manufactured article, and a manufactured article which falls within the category of printed matter. *United States* v. *Deutsch* (178 Fed. 272).

It is contended by counsel for the plaintiff that the holding in the *Nippon* case, *supra*, and other cases of similar import cited in its brief, disposes of the argument "* * * that the paper at bar was 'wrappers in the piece'," and thus prevents the application of the *Buss* case, *supra.* With this contention we are not in accord. While the first quotation from the *Nippon* case, *supra*, might appear to support plaintiff's contention, yet, it will be observed that the decision as a whole does not support such contention, for, as will be seen from the second quotation from the *Nippon* case, *supra*, when paper is not only cut to size, but is printed, it ceases to be available for all the uses to which such paper may be devoted and is fitted for a use which is not characteristic of unprinted paper, the printing transforming such paper into a manufactured article. It, therefore, appears that the *Nippon* case, *supra*, lends considerable support to the classification of the instant merchandise by the collector, rather than supporting the contention of plaintiff.

Upon a full consideration of the facts and the applicable authorities, we are of opinion that the classification of the instant merchandise made by the collector was correct. Having reached the above conclusion, it is unnecessary for us to give any consideration to the contention of counsel for the plaintiff that the pro-

vision for "papers with paraffin or wax-coated surface or surfaces" is more specific than the provision for "papers wholly or partly covered with metal or its solutions," both provisions being found in said paragraph 1405.

For the reasons stated and following the authorities cited and quoted, all claims of the plaintiff are hereby overruled. Judgment will be rendered accordingly.