C. S. ALLEN CORP. *v*. UNITED STATES (No. 4643)[1]

United States Court of Customs and Patent Appeals, October 31, 1950

*Jordan & Klingaman* (*J. L. Klingaman* of counsel) for appellant.
*David N. Edelstein,* Assistant Attorney General (*Richard F. Weeks,* special attorney, of counsel), for the United States.

[Oral argument October 4, 1950, by Mr. Klingaman and Mr. Weeks]

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Associate Judges

[1] C. A. D. 438.

GARRETT, Chief Judge, delivered the opinion of the court:

This is an appeal from the judgment entered, in conformity with its decision (Abstract 54119), by the Second Division of the United States Customs Court, overruling the protests of the importer in two cases, consolidated for the purpose of trial, against the collector's classification of and duty assessment upon merchandise imported through the port of New York, described in the decision as follows:

At the trial a sample of paper representing the merchandise involved in protest 130886–K was admitted in evidence as illustrative exhibit 1. There was also admitted in evidence a sample representing the paper involved in protest 134559–K invoice No. 741736, which was marked collective exhibit 2.

Illustrative exhibit 3 was admitted in evidence as representing the paper involved in protest 134559–K, invoice No. 744953. In this case the paper is labeled "Allen's Toffee Rumbutus Flavor" and is wrapped around a piece of candy, illustrating the use to which the involved paper is put.

According to the record the paper as imported was in rolls 8 inches in diameter and 3½ inches in width and these rolls were packed about 50 to a crate. All of the paper was "identical in thickness and manufacture, just variations in color." At regular intervals there appear the words "Printed in England," and also "Ingredients: Sugar, Corn Syrup, Condensed Milk, Hardened Vegetable Oil, Salt, and Artificial flavor." In addition, the green paper, represented by collective exhibit 2, has printed thereon the words "LICORICE TOFFEE," and this is the only one of the five-color variations that had the two words "Licorice Toffee" added.

As to the use to which these rolls of paper are put, plaintiff's witness stated that they "* * * are consumed on a Rose Wrapping Machine, which uncoils by machinery and cuts the paper at the break in the printing about two inches in length to wrap the piece of candy that comes through the machine from the other side, so the paper is wrapped automatically as the candy is cut." The "break" above referred to is the blank spot on the paper between the printed matter.

The object of having on the paper the printing with reference to the ingredients is to meet the requirements of the Pure Food and Drug Act. It was agreed by and between counsel at the trial that all of the involved papers are covered in part with wax and in part with metal or its solutions.

Plaintiff's witness testified on cross-examination that the words "Printed in England" were done by the manufacturer, and where the words "Licorice Toffee" and "Allen's Toffee" appear, they were put there at the request of the plaintiff; that when these rolls are inserted in the machine they are centered in the machine so that the paper is cut right at the space where there is no printing, so that each constitutes an individual label or piece of wrapping paper; that the words on the individual wrapper show the ingredients of the candy which it is used to wrap; and that these wrappers cannot be used on any piece of candy other than the particular type that is specified on the label.

Upon the basis of the appraiser's description, the collector classified the merchandise under paragraph 1405 of the Tariff Act of 1930 as *articles* of waxed, coated papers, assessing duty at 5 cents per pound and 20 per centum ad valorem.

In its protests importer presented alternative claims. The protests included claims under paragraphs 1409 and 1558 of the Tariff Act of 1930, but the claims under those paragraphs were abandoned at the

trial and reliance was placed upon the following, as stated in the brief for importer before us:

\* \* .\* it is claimed to be *merely paper* and dutiable as such under the same paragraph [1405] either as wax-coated at 3 cents per pound and 15% ad valorem or as covered with metal or its solutions at 5 cents per pound and 15 per cent ad valorem. (Italics ours.)

The principal issue here involved is before this court for the first time.

Paragraph 1405 of the Tariff Act of 1930 is one of the many paragraphs embodied in Schedule 14 (the papers and books schedule) and is somewhat complicated. It reads:

PAR. 1405. Papers with coated surface or surfaces, not specially provided for, 5 cents per pound and 15 per centum ad valorem; papers with coated surface or surfaces, embossed or printed otherwise than lithographically, and papers wholly or partly covered with metal or its solutions (except as herein provided), or with gelatin, linseed oil cement, ·or flock, 5 cents per pound and 15 per centum ad valorem; uncoated papers, including wrapping paper, with the surface or surfaces wholly or partly decorated or covered with a design, fancy effect, pattern, or character, except designs, fancy effects, patterns, or characters produced on a paper machine without attachments, or produced by lithographic process, 4½ cents per pound and 10 per centum ad valorem, and in addition thereto, if embossed, or printed otherwise than lithographically, or wholly or partly covered with metal or its solutions, or with gelatin or flock, 10 per centum ad valorem: *Provided,* That paper wholly or partly covered with metal or its solutions, and weighing less than fifteen pounds per ream of four hundred and eighty sheets, on the basis of twenty by twenty-five inches, shall be subject to a duty of 5 cents per pound and 18 per centum ad valorem; gummed papers, not specially provided for, 5 cents per pound; simplex decalcomania paper not printed, 5 cents per pound and 10 per centum ad valorem; cloth-lined or reinforced·paper, 5 cents per pound and 17 per centum ad valorem; papers with paraffin or wax-coated surface or surfaces, vegetable parchment paper, grease-proof and imitation parchment papers which have been supercalendered and rendered transparent or partially so, by whatever name known, all other grease-proof and imitation parchment paper, not specially provided for, by whatever name known, 3 cents per pound and 15 per centum ad valorem; bags, printed matter other than lithographic, and all other articles, composed wholly or in chief value of any of the foregoing papers, not specially provided for, and all boxes of paper or papier-mâché or wood covered or lined with any of the foregoing papers or lithographed paper, or covered or lined with cotton or other vegetable fiber, 5 cents per pound and 20 per centum ad valorem; plain basic paper ordinarily used in the manufacture of paper commonly or commercially known either as blue print or brown print, and plain basic paper ordinarily used for similar purposes, 20 per centum ad valorem; sensitized paper commonly or commercially known either as blue print or brown print, and similar sensitized paper, 25 per centum ad valorem; unsensitized basic paper, and baryta coated paper, to be sensitized for use in photography, 5 per centum ad valorem; sensitized paper, to be used in photography, 30 per centum ad valorem; wet transfer paper or paper prepared wholly with glycerin or glycerin combined with other materials, containing the imprints taken from lithographic plates or stones, 65 per centum ad valorem. (Italics quoted.)

The trial court held, and counsel for the respective parties agree, that the here material portions of the paragraph, as arranged by the court, read:

PAR. 1405. * * * papers wholly or partly covered with metal or its solutions * * * 5 cents per pound and .15 per centum ad valorem; * * * papers with paraffin or wax-coated surface or surfaces, * * * 3 cents per pound and 15 per centum ad valorem; bags, printed matter other than lithographic, and all other articles, composed wholly or in chief value of any of the foregoing papers, not specially provided for, * * * 5 cents per pound and 20 per centum ad valorem; * * *.

Expressed in simple terms, the exact issue, as the case is presented to us, is whether the printing on the imported material so changed its status, within the meaning of the customs law, that it ceased to be paper and became an article "made of paper," as held by the trial court. The court after finding the facts hereinbefore recited, approved and adopted as a part of its decision the following statement made in the brief on behalf of the Government before it:

An analysis of the above evidence clearly discloses that through the manufacturing process of printing, the involved merchandise has been transformed into a new and different article with a distinctive name, character and use, to wit, a label or wrapper employed solely as a covering for the particular candy described thereon. It is, therefore, clear that the printing process has changed the merchandise from the status of paper to articles made of paper.

The decision of the trial court stems from a decision made by it November 14, 1918, (while it was officially designated the Board of General Appraisers) in the case of *J. A. Chambers* v. *United States*, 35 Treas. Dec. 189, which arose under the 1913 tariff act.

The merchandise involved in that case was described as follows:

The sample introduced in evidence herein shows 45 complete labels printed on a single sheet of paper. These labels, as disclosed by uncontradicted testimony, are cut from the sheet and are used solely as inner coverings or wrappers for a well-known brand of washing blue—a fact concretely demonstrated by the illustrative exhibits herein containing squares of washing blue wrapped in these labels, showing the precise condition in which the blue is offered for sale in our markets.

The printed matter, which is the same on each label, consists of a simple form of trade-mark, a facsimile signature, appropriate words descriptive of the washing blue, and the following statement: "This complete label is registered as well as the device of diamond and crown."

Following the description the Board (now the Customs Court) said:

Unquestionably, such a label is not correctly classified under a tariff provision covering a particular kind or class of paper. It is more than mere paper; it is a complete article, with a distinctive name and use, to wit, a label or wrapper, requiring only to be cut from the sheet in order to make it fully adaptable for such use. That this simple cutting requirement can in no sense be held to affect its tariff status as a label is made plain by the rule reiterated and reaffirmed by the United States Court of Customs Appeals in *United States* v. *Buss* (5 Ct. Cust. Appls., 110; T. D. 34138)—a case which involved the question of the tariff clas-

.sification of certain narrow strips of woven fabric made of cotton, about one-third of an inch in width, imported in running lengths, which required merely to be cut at certain marked intervals in order to make of them articles suitable for use as coat hangers.

In the brief filed before us on behalf of the Government it is said:

The *Chambers* case was followed in *Hawley & Hoops* v. *United States*, T. D. 46458, 63 Treas. Dec. 1063, which arose under the Tariff Act of 1922. The merchandise consisted of rolls of transparent surface-coated or wax-coated paper, 3¼ inches wide, with printed borders, and having printed on the central portion a continuous series of labels reading "A No. 1, Old Fashioned Licorice Gum Drops made by Hawley & Hoops, New York, N. Y., U. S. A."

We note that the Customs Court, in direct connection with the foregoing, said:

This advertising matter appears on both sides of a wrapper containing a piece of candy · * * *.

The trial court made no mention of the *Hawley & Hoops* case, *supra*, in its decision in the instant case. We find nothing in the record before us which indicates that the printing on the imported paper was intended to have any advertising value.

A statement of the ingredients of the candy made by the importer, viz: "Sugar, Corn Syrup, Condensed Milk, Hardened Vegetable Oil, Salt, and Artificial Flavor" was required, it is agreed, by the Pure Food and Drug Act, as the trial court found.

So far as disclosed in the decision in the *Chambers* case, *supra*, there was no such requirement with respect to the merchandise—"a well-known brand of washing blue"—there involved.

The notation "Printed in England" obviously was made to meet the requirement of the marking provision of the Tariff Act of 1930.

Appellant could not have introduced its product into interstate commerce without there being made in some manner a statement of its ingredients. The only reasonable location for such statement, the character of the merchandise being considered, was on the paper in which the merchandise was wrapped.

As for the notation "Printed in England," as has been indicated, it had to be there to comply with the marking statute.

The printed notation "Licorice Toffee" does not seem to us to be anything more than a description of the flavor of the particular candy in the package bearing the notation, and the notation "Allen's Toffee" indicates only that the candy is a product made by appellant.

It is our view, therefore, that the instant case is distinguishable in principle from the cases cited in support of the decision of the trial court, and that the trial court erred in holding that the printing on the paper converted it into articles of paper within the sense and meaning of paragraph 1405 of the Tariff Act of 1930.

Upon the record in the case it is apparent that the merchandise might be classified under either the provision for wax-coated paper

and assessed with duty at 3 cents per pound and 15 per centum ad valorem or the provision for paper wholly or partly covered with metal or its solutions and assessed with duty at 5 cents per pound and 15 per centum ad valorem.

In view of the provision of paragraph 1559 of the Tariff Act of 1930, we hold the latter classification and duty rate to be applicable.

The judgment appealed from is *reversed* and the case will be *remanded* to the Customs Court for further proceedings in conformity with this decision.