UNITED STATES *v.* BORDER BROKERAGE COMPANY (No. 5020) [1]

United States Court of Customs and Patent Appeals, Dec. 8, 1960.

*George Cochran Doub*, Assistant Attorney General, *Richard E. FitzGibbon*, Chief, Customs Section, (*Alfred A. Taylor, Jr.*, and *Richard H. Welsh*, trial attorneys, of counsel) for the United States.

*Barnes, Richardson & Colburn* (*Hadley S. King* and *Norman C. Schwartz*, of counsel), for appellee.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Associate Judges, and Judge WILLIAM H. KIRKPATRICK.[2]

RICH, Judge, delivered the opinion of the court:

The Government appeals from the judgment of the Customs Court, C.D. 2105, sustaining the importer's protest that certain imported rolls of crepe paper should be classified as paper cut into strips under paragraph 1413, Tariff Act of 1930, rather than as crepe paper, *eo nomine*, under paragraph 1404 as classified by the collector.

The competing paragraphs are:

*Assessed:* Paragraph 1404 as modified by T.D. 51802:

Crepe paper, commonly or commercially so known, including paper creped or partly creped in any manner:

Valued at not more than 12½ cents per pound . . . 1½¢ per lb. and 3¾% ad val.

*Claimed:* Paragraph 1413 as modified by T.D. 51802:

*Papers* and paper board and pulpboard, including cardboard and leatherboard or compress leather, embossed, *cut*, die-cut, or stamped *into* designs or *shapes, such as* initials, monograms, lace, borders, bands, *strips*, or other forms, or cut or shaped for boxes or other articles, plain or printed, but not lithographed, and not specially provided for . . . 15% ad val. [Emphasis ours.]

The merchandise is rolls of crepe paper, intended to be used for making cut and folded paper towels. Each roll, either 9½ or 10⅝ inches wide, is about 30 inches in diameter and contains 14,000 to 16,000 linear feet (roughly three miles) of paper.

---

[1] C.A.D. 760.
[2] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge O'Connell*, pursuant to provisions of Section 294(d) ; Title 28, United States Code.

According to the testimony of the single witness called by the importer, as the paper stock emerges from dryers, completing the paper fabricating process, it is wound into huge rolls, 120 inches wide and 40 to 45 inches in diameter. In a subsequent operation performed on a winder, ragged edges of the 120 inch roll are trimmed off and the 120 inch web is simultaneously split into narrower widths, the paper being unrolled and rerolled during the trimming and splitting operation. The 9½ or 10⅝ inch widths are said to fit standard paper towel dispensers of the type which dispense separated individual paper towels as distinguished from the type of towels supplied from a continuous roll. The paper is made into towels adapted for dispenser use by a single machine, about which the witness said: "* * * about all that the folder converter does is take the strip of paper off the roller in rolled form, and it folds, and interleafs, and cuts, never changing the width. * * * The machine is not equipped to change the width of the strip." The witness also referred to the rolls ready to be made into cut towels as "parent roll paper." The making of towels from such rolls is done in a "converting plant."

These facts as to the character of the merchandise, the manner by which it was fabricated and transformed into its imported condition, and its ultimate domestic use, are not disputed. Nor is it disputed that the imported merchandise is crepe paper. The principal issue raised by the Government is simply that the Customs Court improperly construed paragraph 1413, to include the 30 inch diameter rolls of crepe paper as "paper * * * cut * * * into * * * strips."

In resolving this issue against the Government, the Customs Court relied on its own prior decision on toilet paper rolls in *Douglas Paper Company and Border Brokerage Company* v. *United States*, 30 Cust. Ct. 87, C.D. 1501, quoting with approval the following from the opinion in that case:

* * * In the very strictest sense, the merchandise before us consists of strips of crepe paper which have been cut from a parent roll. No more apt expression for a description of this merchandise can be found than that it is paper, cut into shapes in the form of strips. Thus, the description itself invokes almost the identical language employed by Congress in the provision in question.

\*  \*  \*  \*  \*  \*  \*

A "strip" is defined in the 1948 edition of Webster's New International Dictionary of the English Language as:

A narrow or relatively long piece; as, a *strip* of cloth; a *strip* of land.

In the *Douglas* case the Customs Court had before it rolls of toilet paper apparently ready for ultimate use, the paper in each roll being 4¼ inches wide and having perforations at 5 inch intervals to form 700 undetached sheets, the number of sheets in an "average roll of toilet paper." The rolls were 97 yards long. The merchandise was

held properly classifiable under paragraph 1413 on two distinct grounds, the court saying (p. 92):

\* \* \* The evidence is that the sheets were perforated for the purpose of facilitating separation or tearing. To all intents and purposes then the paper as imported consists of sheets of toilet paper 4¼ inches wide and 5 inches long. *United States* v. *Buss & Co.*, 5 Ct. Cust. Appls. 110, T.D. 34138.

But whether as cut sheets of paper, or as cut strips of paper, it seems clear that the paper here in issue has been cut to shape within the meaning and intent of that portion of paragraph 1413, *supra*, with which we are here concerned, and the instant merchandise is covered by that provision.

As to the imported merchandise in the instant case, the court felt that one of the grounds in the *Douglas* case applied equally well to the rolls herein "inasmuch as the characteristics of width and length meet the definition of the term 'strip,' which we have previously cited with approval and the material at bar has been brought to that condition by one of the processes enumerated in said paragraph 1413." The process, of course, was cutting.

This court has previously construed the paragraph 1413 language "embossed, cut, die-cut, or stamped into designs or shapes such as initials, monograms, lace, borders, bands, [or] strips." But the Government asks that we put aside the many decisions—some delineating legislative history, most merely determining classification on the facts of the particular case—and contends:

\* \* \* regardless of the decisions in all these cases, it is submitted that it was never the intention of Congress to include within the provisions for paper cut into shapes, such as strips, the imported rolls of crepe paper. *These are not strips of paper. They are rolls of paper.* [Emphasis ours.]

This argument carries no weight with us. A strip does not cease to be a strip merely because it is rolled up. The Government has failed to supply any indication that Congress did not intend to include such merchandise as that at bar.

The Government's next point is this:

It is submitted, regardless of any dictionary definitions of the term ["strip"], that the very nature and makeup of the imported rolls of crepe paper, in their condition as imported, precludes them from falling within the provisions for paper cut to shapes, such as strips.

No support whatever for this plea is given and since the rolls consist of *strips* of paper three miles long, produced by *cutting* the paper in a wider roll into narrower pieces, or strips, we do not understand the point of the argument.

Next the Government says that even if we accept the definition applied by the Customs Court, the merchandise is not a "strip" by reason of the words "relatively long" in the definition. "How far should the said words be allowed to go[?]," it says. "\* \* \* 14,000 to 16,000 feet is \* \* \* far too long to be relatively long, it goes far

beyond 'relatively long'." But again we are not cited to any authority or presented with any reasoned argument which limits the term "strip" to any length at all, so long as it is of finite length. As we understand the significance of the phrase "relatively long" it means, at most, that the length is considerably longer than the width and it is broad enough to include a length of three miles versus a width of 9½ inches. If it is not, we have not been shown why.

Finally it is argued that the rolls are of crepe paper and that paragraph 721(b) provides for crepe paper *eo nomine*. While this is true, we think the appellee answered that point in the Customs Court when, in opposing a petition for rehearing, it cited *United States* v. *W. X. Huber Co.*, 30 CCPA 183, C.A.D. 231, wherein this court said, page 188:

> Appellee argues that the phrase "not specially provided for" relates back to papers, so that the paragraph should be construed as reading "Papers not specially provided for," limiting the paragraph to papers not having an *eo nomine* designation.
>
> To so hold would largely nullify the paragraph. We find in the paper schedule of said tariff act more than 25 kinds of paper, either *eo nomine* designated or described, none of which under appellee's theory would be subject to the provisions of paragraph 1413.

That case involved filter paper cut into discs from 2½ to 17 inches in diameter. Paragraph 1409 there relied on specified "filtering paper."

We confess to having had certain misgivings about the intent of Congress to include in the term "*shapes*, such as * * * strips" (our emphasis) rolled strips three miles long, especially when that term is prefaced by "cut, die-cut, or stamped." The context leads one's mind, by association, into the category of much shorter strips such as could be produced by die-cutting or stamping. But the broad term "cut" is there and cannot be ignored; and by what other term than "strip" is one to denote a piece of paper three miles long which has been cut from a possibly longer roll of much greater original width?

The only other point we can find in the record—and the Government did not raise it—is that the witness referred to the imported 30-inch rolls of crepe paper as "parent roll paper" and pointed out, in effect, that they are used by "converting" plants as raw material in the manufacture of paper towels by a cutting and folding process. One might say the latter is the kind of cutting Congress contemplated. This might have persuasive effect if there were anything to show that paragraph 1413 was not intended to include such raw or unfinished material, but there is no such showing in the case. On the contrary, the paragraph itself includes papers "cut or shaped for boxes or other articles" and we see no reason why it should be held to exclude cut strips for making towels, even if they are three miles long. We surmise that economy of manufacture would dictate the use of strips

of the greatest feasible length for use on the "folder converter" to which the witness referred.

Seeing no reason to disturb the judgment of the Customs Court, we *affirm* it.