(C.D. 4087)

MITSUI & CO. (U.S.A.), INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided October 13, 1970)

*Barnes, Richardson & Colburn (Earl R. Lidstrom* of counsel) for the plaintiff.
*William D. Ruckelshaus,* Assistant Attorney General (*Arthur H. Steinberg* and *James Caffentzis,* trial attorneys), for the defendant.

Before Rao, Ford, and Newman, Judges

Ford, Judge: Plaintiff by timely protest brings before this court for determination the proper classification of certain copper wire imported in continuous lengths which was invoiced as "Single Polyurethane Copper Magnet Wire." The merchandise was assessed with duty at the rate of 17 per centum ad valorem under item 688.04 of the Tariff Schedules of the United States, as amended by the Technical Amendments Act of 1965, 100 Treas. Dec. 661, T.D. 56511.

It is contended by plaintiff that such wire should have been assessed with duty at 15 per centum ad valorem under the provisions of item 642.97. Plaintiff alternatively claimed, but does not press said claim, under item 612.72. The latter claim is hereby dismissed.

The pertinent portions of the statutes involved provide as follows:

| | | |
|---|---|---|
| | Insulated (including enamelled or anodized) electrical conductors, whether or not fitted with connectors (including ignition wiring sets, Christmas-tree lighting sets with or without their bulbs, and other wiring sets):<br> Without fittings: | |
| 688.04 | Containing (exclusive of insulation and sheathing) over 10 percent by weight of the metal copper _____ | 17% ad val. |

*Part 3 headnotes:*

1. For the purposes of this part—

(a) *"wire"* is deemed to be a base-metal product which conforms to the respective cross-sectional measurements for base-metal wires in part 2, whether or not conforming otherwise to the specifications set forth therein. In the provisions of this part which describe wire in terms of its cross-sectional dimension, the dimension specified is that of such wire without its metal coating, if any.

*Subpart B headnote:*

1. This subpart does not cover—

\* \* \* \* \* \* \*

 (ii) insulated electric conductors or uninsulated electric conductors specially provided for in part 5 of this schedule;

\* \* \* \* \* \* \*

Milliners' wire and other wire covered with textile or other material not wholly of metal:

\* \* \* \* \* \* \*

642.97 Other _____ 15% ad val.

The record consists of the testimony of a Mr. Yamaguchi, an employee of plaintiff, who identified a sample of the imported merchandise as single polyurethane copper magnet wire, AWG 44, which was received in evidence as plaintiff's exhibit 1. Defendant offered the testimony of a Mr. Mol and had received in evidence as defendant's exhibit A, a collection of armature windings and coils.

Counsel for the respective parties stipulated to the following facts:

1. The merchandise is non-tubular copper.

2. The merchandise has a cross-sectional configuration which is not flat.

3. The merchandise is not over 375 one-thousandths of an inch in maximum cross-sectional dimension.

4. The merchandise is imported in the condition as represented by plaintiff's exhibit 1.

The term "wire" is defined in schedule 6, part 2, subpart C, as follows:

*Subpart C headnotes:*

1. This subpart covers copper, its alloys, and their so-called basic shapes and forms, and in addition covers copper waste and scrap.

2. For the purpose of the tariff schedules, the following terms have the meaning indicated:

\* \* \* \* \* \* \*

(d) *Wire:* A non-tubular product of any cross-sectional configuration, which if flat is in coils or straight lengths, not over 1.25 inches in width, not over 0.188 inch in thickness, and has all surfaces rolled or drawn, and which if not flat is not over 0.375 inch in maximum cross-sectional dimension and is in coils.

The witness, Evert A. Mol, called on behalf of defendant, is director of research for Rea Magnet Wire Co. His duties include visiting customers' plants to assist them with problems which might occur. He has published several papers on magnet wire, holds patents in the magnet wire field, and is a member of a number of professional societies.

Mr. Mol introduced defendant's exhibit A and described an armature for a small motor which contained green magnet wire. The wire serves as a conductor of electrical current. The large round exhibit containing gold-colored magnet wire is the field of the motor which creates a magnetic field. While the AWG of the exhibits introduced by defendant is of a different size, the function is the same irrespective of the size.

An electrical conductor according to Mr. Mol is a material that has a low resistance to the passage of electrical current. Plaintiff's exhibit 1 is an electrical conductor.

The word "single" on the invoice refers to the amount of insulation. Wire insulated with polyurethane is also referred to as enameled. There is a difference between covered wire and insulated wire. A covered wire may have a conductive covering and is therefore not insulated. The term "insulated" is the opposite of conductor. Exhibit 1 is insulated.

Copper is among the best electrical conductors available. The term AWG 44 refers to the nominal diameter of the copper conductor in this case 2/1000 of an inch. The term AWG refers to American wire gauge and soldex refers to the type of insulation and indicates the wire can be soldered without the removal of the insulation. The intended uses of this wire, such as plaintiff's exhibit 1, include the manufacturing of field coils for armature windings of electric motors, television coils, relay coils, and coils of that nature as well as windings of transformers.

In the trade, copper wire is usually sold in lengths which would allow for several applications. The term wire in general is a material in an elongated form and can be circular, rectangular or square.

In determining the AWG, the measurement does not include the insulation.

The competition involved herein is between "insulated electric conductors" and wire covered with textile or other non-metallic material.

The record clearly establishes exhibit 1 to be an insulated covered electric copper wire. Plaintiff contends by virtue of the headnotes in parts 2 and 3 of schedule 6, Tariff Schedules of the United States, a certain progression of wire was intended from which insulated electrical conductors were excluded. An examination of the material contained in part 2, *supra*, indicates it provides for wire and wire rod while part 3B includes various forms of wire none of which are in the slightest related to electrical wire.[1] On the other hand, part 5 of schedule 6, Tariff Schedules of the United States, covers electrical articles. The theory of plaintiff, in our opinion, tends to support the classification to the extent that the wire provided elsewhere was not intended to include electrical wire or insulated electrical conductors. It would seem that the theory of plaintiff is based upon the premise that all wire is electric wire. This error becomes obvious when one considers plastic coated fencing wire. Obviously, this wire is covered but by no stretch of the imagination would one consider such wire to be electrical wire or conductors.

Plaintiff, in any event, bases its claim on the theory that insulated electric wire when imported in continuous lengths cannot be considered insulated electrical conductors, citing *United States* v. *Buss & Co.*, 5 Ct. Cust. Appls. 110, T.D. 34138 (1914), and *United States* v. *The Harding Co.*, 21 CCPA 307, T.D. 46830 (1933). These cases stand for the proposition that where an article is imported in running lengths but marked for cutting, the article is considered for duty purposes as if it had been cut apart. This rule is applicable only if the character or identity of the article is fixed with certainty.

These decisions might be applicable if the clear intent of Congress was not shown otherwise. In the first instance, General Interpretative Rule 10(h) provides:

> (h) unless the context requires otherwise, a tariff description for an article covers such article, whether assembled or not assembled, and whether finished or not finished;

Accordingly, insulated electric wire in continuous lengths which are intended for particular purposes may fall within the above rule, as unfinished. Additionally, and more compelling, is the language of the superior heading of item 688.04, *supra*, which provides "whether or not fitted with connectors." This language was considered in the case of *C. J. Tower & Sons of Buffalo, Inc.* v. *United States*, 63 Cust. Ct. 128, C.D. 3886 (1969), wherein the court made the following observation:

> We have carefully considered plaintiff's claim that the "insulated * * * electrical conductors" provision encompasses all

---

[1] Cables, wire rope, fencing wire, fourdrinier wire, screening, netting, bale ties and milliner's wire.

insulated electrical articles which conduct electricity, whether such transmission be its chief use or only incidental thereto, and whether or not they are cut to length.

We agree at the outset with plaintiff that the importation of electrical cable in continuous rolls does not exclude it from classification under item 688.05 in light of the language of the superior heading, "whether or not fitted with connectors", and of the item itself which provides for conductors "without fittings". The breadth of the wording used therein indicates an intent to cover electrical conductors even if not cut to length.

We also note that the *Tariff Classification Study, Explanatory and Background Materials*, November 15, 1960 (prepared by the Tariff Commission for the use of Congress in considering the proposed revised schedules), states in schedule 6, part 5, at page 307, that—

> * * * Item 688.05 covers insulated electrical conductors without fittings at the rate of 15 percent ad valorem currently applying thereto under paragraph 316. * * *

> * * * * * * *

Therefore, we must perforce conclude that item 688.05 was designed to provide for items used chiefly for one specific purpose, namely, to conduct electricity; and that Congress intended to draw a distinction in TSUS, based upon use, between electrical conductors and other electrical articles which also conduct electricity but only as a concomitant to some other function.

Based upon the foregoing it is apparent that the intent of Congress was to include insulated electric wire whether in continuous lengths or cut to fall within the purview of item 688.04, *supra*. As indicated, *supra*, the claimed provision and in fact all of part 3B does not cover electrical wire.

In view of the foregoing we hold the classification to be correct and the claim in the protest is therefore overruled.

Judgment will be entered accordingly.

(C.D. 4088)